## MULLER *v.* SPRECKELS.[1]

*(District Court, E. D. Pennsylvania. October 20, 1891.)*

**1. CONTRACT BY MASTER OF VESSEL—VALIDITY.**

An agreement by a charterer to give the master of a vessel a drawback in consideration of his permitting the stevedoring to be done by him at a higher price than it could have been done by other parties is void.

**2. CHARTER-PARTY—RIGHTS OF CHARTERER TO UNLOAD—COMPENSATION.**

A ship contracted for 35 cents a ton for stevedoring a cargo of sugar, which was a fair compensation; the charterer himself assumed the stevedoring, charging 45 cents a ton. *Held*, as the right to do the stevedoring was the ship's, and was not given to charterers by a charter-party providing that the "ship to be addressed to * * * charterers or their agent at port of discharge for custom-house business on the usual terms," the charterer is not entitled to more than the service would have cost the ship.

**3. WHARFAGE—LIABILITY OF VESSEL.**

Where a vessel, to make the delivery required by the terms of the charter, is compelled to enter a dock, and for this purpose enters the dock of the charterer, she is liable to him for the ordinary charges for such accommodation.

**4. SAME—CUSTOM.**

A charge made for the use of a dock, equal to the usual wharfage fee, where a vessel enters it, and excludes by her presence others from the use of the wharf, al-

---

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

though not using the wharf herself, is a recognized usage of the port of Philadelphia, and vessels are held to a knowledge thereof.

**5. DELIVERY OF CARGO—CLAIM FOR SHORTAGE.**
Where a paragraph of a bill avers delivery of "the whole cargo taken on board," and the answer acknowledges that the paragraph containing this averment is true, a claim for shortage of cargo cannot be allowed.

**6. ENTRY AT CUSTOM-HOUSE—FEES OF CHARTERER'S AGENT.**
Although making entry was by charter-party the duty of the charterer's agent, yet, if he be informed before doing so that entry has been made, he will not be allowed for making it a second time, nor for the services of a tug in making it.

**7. SAME.**
Where a charter-party confines the duties of a ship's agent to "custom-house business" he is not the general representative of the ship, and is not entitled to an "attendance fee."

In Admiralty.

Libel by Victor H. Muller, master of the steam-ship Eugenie, against Claus Spreckels to recover freight. The gross freight was $7,587.72, which had been paid less the following deductions: Entrance fee, $5; custom-house fees, $1.40; tug-boat services delivering orders, $2; wharfage, $225; stevedore, $1,424.61; advertising, $5.95; stationery, etc., $10; "attendance" fee, $50; commission, $190.82; short delivery, $42.07.

*John Q. Lane,* for libelant.

*Frank P. Prichard* and *John G. Johnson,* for respondent.

BUTLER, J. The libel is for freight, under charter-party—for carrying sugar. The amount earned is $7,632.80. The charter provides that "the ship shall pay charterer's agent at port of discharge a commission of two and a half per cent. on gross freight," and that the ship "shall be addressed at the port of discharge to the charterer or his agent for custom-house business, on the usual terms." The cargo was to be delivered at Philadelphia, "along-side store or into craft or steamer at wharf, pier, or on cars, always afloat," as ordered. On the ship's arrival controversy arose respecting the appointment of an agent, and the employment of stevedores. As we have seen, it was the charterer's right to appoint an agent, and the duty of unloading was on the vessel. The charterer, Spreckels, appointed Hempstead & Co. and desired the employment of his own stevedores, at 45 cents per ton; while the master was solicitous for the appointment of Wesenberg & Co. as agents, and selected his own stevedores—contracting to pay 35 cents per ton. An effort was made to reach an agreement on the subject, and several interviews between the parties occurred. The testimony produced is too contradictory to prove the allegations of either side. The libelant sets up an agreement for the appointment of Wesenberg & Co.; and the respondent an agreement that his stevedores should be employed at 45 cents per ton. The burden of proof is on the party setting up the agreement; and in view of the contradictory character of the testimony the written contract shown by the charter must prevail. The fact that the charterer selected an agent, and throughout the transaction insisted on his recognition by the ship, is inconsistent with the allegation that he agreed to the appointment of Wesenberg & Co.; and the fact that the

ship employed stevedores at 35 cents per ton is equally inconsistent with the allegation that she agreed to accept Mr. Spreckels' stevedores at 45 cents. If it is true as alleged, that she did this in consideration of an agreement to pay the master and Wesenberg & Co. a drawback of $50 each, the transaction should not be recognized. Such attempts when proved should subject masters and their agents engaged therein to severe punishment. The statement by respondent's counsel that the master admits the alleged agreement to employ these stevedores, is not sustained by the evidence, as I understand it. It is true that he does not say that such an agreement was coupled with an understanding that Wesenberg & Co. should have the agency. It would be unjust to wrest the admission from its connection, and thus use it against him. There is nothing in the evidence, therefore, to justify a departure from the terms of the charter in ascertaining the rights of the parties. By this instrument, as we have seen, Mr. Spreckels' agent was authorized to transact the ship's custom-house business, making the usual charges and disbursements on that account, and is expressly given a commission of $2\frac{1}{2}$ per cent. on the gross amount of freight. The right to employ stevedores was the ship's; and Mr. Spreckels, who assumed the exercise of it, is entitled to no more than the employment would have cost her. As before stated she contracted to have it done for 35 cents; and this the master and Mr. Moe say was a fair compensation. The master's further statement, as well as that of Mr. Wesenberg, that the service ought to have been performed for less, under their construction of the charter, I do not consider entitled to any weight in view of the facts just referred to.

The freight earned, as we have seen, was $7,632.80. Of this $5,675.95 were paid to the ship's owners directly by Hempstead through draft. Of the balance $225 has been withheld as compensation for wharfage. It is objected that the vessel was not compelled to provide a wharf, and that this charge is therefore improper. To make the delivery required by the charter however, it was necessary to enter the dock connected with the wharf. Although this was the private wharf of Mr. Spreckels, the testimony shows that wharfage is always charged under such circumstances, and justifies a conclusion that no difference exists as regards the charge where the wharf is not used if the dock is. The vessel's presence excluded its use by others, and the charge is consequently the same as if it were employed. Such is the usage of this port and the ship must be held to a knowledge of it. Mr. Spreckels testifies that the amount claimed is the usual charge, and there is no suggestion that it is excessive. The sum of $42.07 retained for shortage of cargo, cannot be allowed. The answer expressly admits receipt of the entire amount shipped. The third paragraph of the libel avers delivery of "the whole cargo taken on board" and the answer says "the averments of the third paragraph of the bill are true." Besides I find nothing in the evidence to sustain the allegation. The sum of $190.82 retained as commission on freight is distinctly authorized (as we have seen) by the charter. The sums of $5 and $1.40 fees for entrance at the custom-house should not

be allowed. While the duty of making entrance devolved upon the charterer's agent, the charterer was informed in advance that the entry had been made, and he should not therefore have incurred the expense of making it a second time. The service of a tug for which $2 is charged was, as I understand, required only in making the entry, and should be disallowed. The $5 charge for advertising should not be allowed; and the same must be said of $10 for stationery, etc. Nor do I see anything in the evidence to justify the charge of $50 "for attendance fee." The duties of this agent were confined to "custom-house business." He was not the general representative of the ship, and there is nothing in the evidence to show any connection between this business and the charges here referred to. Settlements for the freight, after making the deductions allowed, should have been made with the master or his agent. The payment however, to the owners to the extent made, should under the circumstances be credited to Mr. Spreckels. A decree may be prepared accordingly.