## THE KENDAL.

### YOUNG et al. v. THE KENDAL.

(District Court, D. South Carolina. May 18, 1893.)

1. ADMIRALTY—PLEADING AND PROOF—VARIANCE.
   A stevedore's libel for services performed in loading a vessel alleged that the services were rendered on the master's request, and that by reason thereof there became due the sum demanded. There was no allegation that the services were reasonably worth that sum. *Held,* that this language did not necessarily import an implied contract and a claim on quantum meruit, and there was no variance when the proof showed an express contract.

2. SHIPPING—STEVEDORE'S CHARGE—REASONABLENESS.
   A stevedore's charge of 45 cents per bale for loading cotton at Charleston, S. C., is a reasonable charge, it appearing that this is the uniform charge at that port, and the price contemplated and provided for in the charter party.

3. SAME—STEVEDORE'S LIEN—DEFENSES.
   The charge of 45 cents per bale being reasonable and customary, the vessel may be held for that amount, notwithstanding that the stevedores were under a general contract to load all vessels coming to the consignees of this vessel, in consideration of paying them 10 cents per bale on each bale loaded.

4. SAME—MARITIME LIENS—NECESSITY FOR SERVICES—BURDEN OF PROOF.
   When it appears that services rendered to a vessel were necessary, and that the contract therefor was made with the master in a foreign port, the presumption is that they were furnished on the credit of the vessel. And this presumption is not overthrown by simply showing that the owners had made arrangements to furnish other credit, or to supply funds. The proof must further show that these arrangements were effective in producing the result.

In Admiralty. Libel by Thomas Young & Co. against the British steamship Kendal to recover for services as stevedores. Decree for libelants.

Mitchell & Smith, for libelants.
Bryan & Bryan, for respondent.

SIMONTON, District Judge. The libelants are stevedores. Under contract with the master of the steamship Kendal they loaded her with cotton in bales. When loading was completed, and the ship ready for sea, the bill of libelants was presented for payment to the master. He did not pay it, and this libel was filed, and the warrant of arrest executed. Some few days after the arrest of the ship, all of the bill was paid except the sum of $650. This amount was deposited subject to the decision of the court. No question has been made as to the jurisdiction. All doubts on this point have been settled. The Main, (5th Circuit,) 2 U. S. App. 349, 2 C. C. A. 569, 51 Fed. Rep. 954.

Before discussing the merits of this case, the first point to be decided is upon dismissing the libel for variance between the allegations and the proof. The respondent contends that the libel counts upon an implied contract and a claim thereunder quantum meruit; and that the evidence discloses an express contract. Although pleadings in admiralty are liberally construed, and the courts look to the substantial right and facts disclosed more than to the form of the statement, still there are certain fundamental rules instituted for the promotion of the ends of justice which must be observed. When a party is brought into court he must not be surprised. He must be able to know from the pleading the case he is called to meet. The allegata and probata must agree. Jenks v. Lewis, Ware, 51; McKinley v. Morrish, 21 How. 343. An inspection of the pleadings can decide the question raised. The libel alleges:

"That the libelants are stevedores residing and doing business in Charleston aforesaid, and at the request of the said Charles Bennett, the master of said steamship, performed their service of stevedores in loading the said cargo of cotton, thereby enabling her to earn the freight thereto, and to complete and perform the engagements into which she had entered to transport said cargo; that there became due to the libelants by reason of the premises the sum of $2,945.25, and the further sum of $65.45 for the use of tarpaulins and covering the said cotton, which he has demanded of the said master, who refuses to pay the same, or any part thereof; that the services of the libelants were rendered to the said steamship, and upon her credit, as well as on that of her master and owner, and were necessary to enable her to perform her voyage, deliver her cargo, and earn her freight."

The language here used does not necessarily import an implied contract from which the quantum meruit arises. It says that the services were performed at the request of the master, and that by reason of the premises there became due to libelants the sum of money claimed,—not that the services were reasonably worth this sum, and that, having been performed at the master's instance, libelants were entitled to it; but the sum was due upon the performance of the service, and because of the request of the master, without reference to the reasonableness of the charge. The objection is overruled.

The price charged for the stevedoring was at the rate of 45 cents per bale. As the contract was made with the master, and a lien is claimed under it, we can inquire whether the service was necessary, and the charge was reasonable and proper. There can

be no doubt that the service was necessary. In order to earn freight the ship must be loaded. Universal experience and practice demonstrate that it is best to load with expert skill of stevedores. The charge was stated to the master before the service began. He made inquiry of others, and then accepted it. It is the usual, if not the only, price charged in the port of Charleston. It was the price contemplated and provided for in the charter party. This document allowed a charge against the ship of $1.21 per bale. Of this 70 cents was for compressing, 6 cents for insurance, and 45 cents for stevedore. It seems, however, that libelants had made a contract with Card & Son, agents and charterers of the steamship, to give them 10 cents per bale for every bale of cotton put in by them as stevedores on all vessels consigned to Card & Son, and docked at the wharves of Young, one of the libelants. Card & Son are indebted to the owners of this steamship for this charter. Respondent insists that the vessel should not be charged with this full sum of 45 cents, but only with 35 cents per bale, because of this agreement. Had the contract for 45 cents per bale been made with Card & Son, or through them, or by their intervention and influence, and if, by reason of this, the vessel was put to a disadvantage, and had been made to pay for the service more than it was worth, or more than persons in the same business would charge for it, this objection would have been well founded. The Cognac, 2 Hagg. Adm. 387. But not only do the libelants prove that this 45 cents was the customary charge, and that the master accepted it after he had inquired as to this fact, but Mr. Street, one of the largest, if not the largest, of the ship agents in this port, confirms him in the reasonableness and customary character of the charge. There is no evidence whatever that Card & Son had anything to do with the contract, suggesting, recommending, inducing, furthering, or confirming it. Nor does there appear any moral obliquity in their receipt of 10 cents per bale. Mr. Street says that it is the practice of this port for stevedores in the summer season to seek business from shipping agents. They engage to do all the work they will require when the trade opens at the customary rates, and to pay the shipping agent so much per bale, 10 cents being not an unusual charge. While, therefore, the system of rebates and commissions to agents is the fruitful parent of fraud, and a transaction like this must be closely watched, in the present case it would seem that no harm possible has been done to the vessel; it being admitted that libelants are competent stevedores.

The next ground taken by respondent is that by the terms of the charter party the master could readily get all funds needed for the expenses of the vessel, and so he could not pledge her credit. While it is true that the libelant who was examined declared that he had not seen the charter party, yet he has had large experience, both as shipping agent, charterer, and stevedore, and he knows that charter parties in this port have the same provision, to wit:

"Sufficient cash for ordinary disbursements at port of lading to be advanced to the master by the charterer's agent at the current rates of exchange, steamer paying 2½ per cent. commissions thereon, but the captain to give his draft upon his consignees at port of discharge, payable three days after his arrival, against his freight for the amount thereof," etc.

There can be no doubt that the mere rendition of service will not entitled a recovery in rem against a vessel if it appear that the master had funds sufficient to pay for the service, and that this was known, or could upon inquiry have been known, to the creditor. The Lulu, 10 Wall. 192. When the services are shown to be necessary, and the contract is made with the master, the presumption is that they were furnished upon the credit of the master, and that this presumption must be met and rebutted. The Grapeshot, 9 Wall. 141. The doctrine is stated by Judge Clifford, with his customary force and clearness, in The Lulu, 10 Wall. 202:

"Whenever the necessity for the repairs and supplies is made out, it is incumbent upon the owners, if they allege that the funds could have been obtained upon their general credit, [and we may add, or that the master was in funds,] to establish that fact by competent proof, and that the libelant knew the same, or was put on the inquiry, unless those matters fully appear in the evidence introduced by the libelant."

It is not sufficient, in meeting this presumption, to show that arrangements had been made or contracts entered into by the owners to furnish this credit or to supply these funds. The proof must go further, and show that the arrangements and contracts were effective in producing the result. Creditors are not to be remitted to or liable for the solvency or good faith of agents or charterers unless they expressly contracted with or showed reliance on them.

There is no evidence whatever that Card & Son, the charterers, advanced one dollar for these expenses, or that they or the master ever were in funds to meet them. On the contrary, the whole tendency of the evidence is contradictory of this, and when the services were performed, and demand made for payment the master frankly owned that he had no funds with which to pay the bill. He not only submitted to, but he also encouraged, the suggestion of filing this libel as the means of enabling him to draw on his owners. The money was not paid until the vessel had been under arrest four days. The suit now pending between the owners of this vessel and the charterers for breach of charter party may explain this. We cannot assent to the idea that, after libel filed, the master can show that he is able to be in funds, and that this can defeat the lien. It is ordered that a decree be entered for libelants in the sum of $650 and costs.