## GEORGE W. BUSH & SONS CO. v. THOMPSON.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1895.)

No. 105.

1. SHIPPING—RIGHT TO SELECT STEVEDORE.

In the absence of any provision to the contrary in the charter party, or any different custom of the port, a vessel is entitled to employ a stevedore of its own selection, to load the cargo furnished to it by the charterer, provided such stevedore is competent.

2. SAME—CUSTOM OF THE PORT OF SAVANNAH.

There is no custom in the lumber trade at the port of Savannah, Ga., that a shipper shall have the right to select his own stevedore.

Appeal from the District Court of the United States for the District of Maryland.

This was a libel by Abram P. Thompson, master of the schooner William Neely, against the George W. Bush & Sons Company, for breach of a charter party. The district court rendered a decree for the libelant (60 Fed. 631). Respondent appeals.

The court stated the case as follows: The schooner William Neely was chartered by the George W. Bush & Sons Company, of Wilmington, Del., for a voyage from Savannah, Ga., to New York. A charter party was signed March 28, 1892, containing, among others, the following provisions: "The said party of the second part doth engage to provide and furnish to said vessel a full and complete cargo, under and on deck, of resawed Y. P. lumber, with stowage, and to pay to said party of the first part, or agent, for the use of said vessel during the voyage aforesaid, four and 87/100 dollars per M. feet, freight measurement, for all delivered and free wharfage. It is understood and agreed that, if charterers give the vessel fifty M. feet per day at Savannah, the rate of freight is to be four and 75/100 dollars per M. foot and free wharfage. Charterers are responsible both at loading port and discharging port up to a draught of 17½ feet. Should the vessel draw more than 17½ feet, lighterage, either in New York or Savannah, to be had at the expense of vessel. It is agreed that the lay days for loading and discharging shall be as follows (if not sooner dispatched), commencing from the time the vessel is ready to receive or discharge cargo: At least forty M. feet per day, Sundays excepted, to be allowed for loading and dispatch for discharging; and that for each and every day's detention by default of said party of the second part, or agent, eighty-five dollars per day, day by day, shall be paid by said party of the second part, or agent, to the said party of the first part, or agent. The cargo or cargoes to be received and delivered alongside, within reach of the vessel's tackles, at ports of loading and discharging." The charterers directed the schooner's master to report for cargo to the Georgia Lumber Company, at Savannah, and he did so on May 2, 1892. The lumber company advised the master as to the wharf at which he was to load, and the lumber for his cargo, much of which was then ready alongside within reach of the schooner's tackles. A controversy arose between the manager of the lumber company and the master, relative to the selection of a stevedore, the master having contracted with Sam Daniels, a stevedore of the port of Savannah, who he claimed was experienced and competent, while the manager objected to him as being untrustworthy and incompetent. The master insisted on his right to select his own stevedore, and put Daniels and his gang to work. They had loaded part of the cargo, when the officers of the lumber company refused to deliver the residue of the cargo, and ordered Daniels and his men off the wharf, which was owned by the company. The lumber company repeatedly offered to deliver the lumber if the master would employ any other stevedore, while the master, refusing to discharge Daniels, notified the com-

pany daily that his vessel was ready for the cargo, and that the stevedores were employed to stow it. This contention continuing, the schooner was, at the request of the lumber company, removed from the wharf on the 17th day of May, 1894, by the harbor master, and on the 24th of that month the master rechartered at reduced rates. On June 27, 1892, the master of the William Neely, and agent of her owners, filed a libel in the district court of the United States for the district of Maryland, against said George W. Bush & Sons Company, in which it is claimed that the failure to load the vessel at Savannah, under the charter mentioned, was wholly the fault of the Georgia Lumber Company, the agent of the charterer, and that the libelant was in no way responsible for the same. Damages were claimed to the amount of $2,500, because of said failure to load the schooner, and for loss of time resulting therefrom, and process of attachment was prayed against the goods, chattels, credits, and effects of the charterer, then in the district of Maryland. The case was duly matured, and came on to be heard, when the court found for the libelant, and entered a decree against the stipulator and respondent for the sum of $2,010.35, with costs. From this decree an appeal has been allowed.

Edgar H. Gans, for appellant.
Robert H. Smith, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

GOFF, Circuit Judge. The charter party is silent as to the matter of the employment of the stevedore. It is usual to provide in it that the vessel shall engage the services of the stevedore of the charterer. Such a provision is fair, and the stevedore so employed is under the direction of the master, and may be discharged for carelessness or incompetency. In the absence of such provision, the vessel can employ its own stevedore, if the custom of the port does not otherwise provide. Having failed to reserve that right, the charterers in this case were not at liberty to demand that they be permitted to furnish the stevedore, as the master had that right, provided he selected a competent one. The cargo was lumber, and the stowage of the simplest character. The evidence shows that the stevedore engaged by the master was fully competent, of great experience, and well known at the port of Savannah, where he had so worked for many years. That he had previously had trouble with the shippers, and that his employment was extremely distasteful to them, while a matter that was proper to be submitted by them to the master in connection with the propriety of the employment, is without weight, when presented for the purpose of controlling his conduct or overruling his action. It was the duty of the schooner to stow the cargo, the shipper having placed it at her side, within reach of her tackle. The vessel, under the circumstances of this case, was entitled to select the stevedore, and she was required to pay him for his services, being also responsible for the manner in which he discharged them. Portland Shipping Co. v. The Alex. Gibson, 44 Fed. 371; The Keystone, 31 Fed. 412; Muller v. Spreckels, 48 Fed. 574; Sack v. Ford, 13 C. B. (N. S.) 90; Richardson v. Winsor, 3 Cliff. 395, Fed. Cas. No. 11,795; Culliford v. Gomila, 128 U. S. 135, 158, 9 Sup. Ct. 50; Scrutt. Charter Parties, art. 50, p. 94. The appellant insists that it is proven by the testimony that, by the usage

of the lumber trade at the port of Savannah, the shipper has the right to select the stevedore. The court below did not find from the evidence the existence of such usage, and in this finding we concur. It is shown that during the past few years a number of the shippers at that port have endeavored to establish such a custom, but it also appears that their action has not been acquiesced in by the shipmasters, and has not been of that certain, uniform, and known character as will authorize a court to hold it to be a custom binding upon the trade and controlling masters, in the absence of stipulations in the charter party. Judge Morris, who heard the case below, in disposing of it, used the following language, which we approve of and hereby include in our opinion:

"The case comes to this: That the respondents who chartered the schooner contracted to furnish her at Savannah with a full and complete cargo of lumber; that the lumber was tendered, but with a condition annexed which was not warranted by the charter party, nor by any usage of the port. It was in fact refused, unless the master would submit to a requirement which was not in the charter party or sanctioned by usage. The master having already in good faith contracted with a competent stevedore, selected by himself, he could not be compelled to dismiss that stevedore as a condition of the cargo being furnished to him. There was therefore a refusal to furnish cargo in compliance with the stipulation of the charter party. Hudson v. Hill, 43 L. J. C. P. 273."

For the reasons given, the decree appealed from is affirmed.