## THE ELTON.

### MARQUEST v. GRANT.

(Circuit Court of Appeals, Fourth Circuit. November 24, 1897.)

No. 235.

1. ADMIRALTY PROCEDURE — REFERENCE TO COMMISSIONER — EFFECT OF FINDINGS.

Where, by written consent of the parties, the cause is referred to a commissioner, his findings of fact are entitled to the same weight as the findings of a master in chancery, and will not be disturbed when based on conflicting testimony or the credibility of witnesses, or so far as there is any testimony consistent with the finding.

2. SHIPPING—INJURY TO STEVEDORE—DEFECTIVE APPLIANCES—CHARTER PARTY.

By a charter party, only the freight room was hired, and the vessel remained in the control of the owner, the master and crew continuing his servants. The loading was to be done by a stevedore employed by the charterers, but under the supervision of the master, and the vessel was to furnish the use of her tackle and appliances for loading. *Held*, that the vessel was liable for an injury to one of the stevedore's employés, resulting from the use of defective appliances.

3. SAME—ASSUMPTION OF RISKS.

A member of a stevedore's gang does not assume extraordinary risks which arise from the use of unsafe appliances in loading.

Appeal from the District Court of the United States for the Eastern District of South Carolina.

This was a libel in rem by George Grant against the steamship Elton to recover damages for personal injuries. In the circuit court a decree was rendered for the libelant, and the master of the steamship appealed.

J. P. Kirlin, for appellant.

W. Huger Fitzsimons, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and PURNELL, District Judge.

SIMONTON, Circuit Judge. This case comes up on appeal from the district court of the United States for the district of South Carolina, sitting in admiralty. The libel is filed by George Grant, one of a stevedore's gang, who was at work in the hold of the British steamship Elton, of which the appellant was master. The vessel was under charter party for a lump sum. The cargo furnished by the charterers consisted of cotton in bales, and of pig iron. The appliances furnished for loading the pig iron were at first large buckets, such as are used in loading coal. These were discontinued, and the pig iron was sent into the ship at the same time as the bales of cotton. The cotton bales were placed, three or four of them, in a sling, and from three to six pieces of pig iron were placed in the sling with the cotton. Naturally, if the contents of the sling struck

the side of the ship or the deck or the combing of the hatch as they were hoisted in, one or more of the pieces of pig iron were liable to fall out. The libelant charges that, while he was at work in the hold, he was struck by a bar of pig iron, which fell down the hatchway, as it was being put into the vessel; also, that this pig iron fell because of the negligence of the master of the ship in his failure to provide suitable and safe appliances for loading the iron, and also for failing to provide a safe place for him while engaged in the performance of his duties, and also in using unsafe, defective, and insecure appliances. The answer denies the allegation of negligence; sets up the defense of accident, negligence of fellow servants, and risks incident to the employment; and also, by way of reduction of damages, pleads contributory negligence on the part of libelant. The cause, being at issue, came before the court below, which granted an order, presented with written consent of counsel on both sides, referring the cause to C. J. C. Hutson, Esq., as commissioner, to take the testimony thereon, and to report all matters of law and fact arising in said case, with his conclusions thereon. The commissioner took all the testimony, and made his report thereof, and of the law relating thereto, giving his conclusions thereon. As conclusions of fact, he held that the use of improper and unsafe appliances was the proximate cause of the injury to the libelant, without any contributory negligence on his part; and, as a conclusion of law, he held the vessel responsible in damages. These conclusions of the commissioner, having been submitted to the court, met with its approval. They were adopted by the court below, and the report of the commissioner was ordered to stand as the judgment of the court. It comes here upon assignments of error.

The reference to a commissioner was authorized by rule 44 in admiralty. The commissioner, under that rule, had and possessed all the powers in the premises which are usually given to and exercised by masters in chancery in references to them. The reference was with the written consent of parties, and was presented to and made by the court as the result of such consent. The same regard must be had for the findings of the commissioner under these circumstances as would have been shown to the findings in a report of a master in chancery. The conclusions of a master on matters of fact are, under all circumstances, entitled to great respect. Medsker v. Bonebrake, 108 U. S. 71, 2 Sup. Ct. 351; Tilghman v. Proctor, 125 U. S. 149, 8 Sup. Ct. 894; Callaghan v. Myers, 128 U. S. 666, 9 Sup. Ct. 177. And when, as in this case, both parties present to the court a consent order providing for a report by the master of his conclusions upon the facts and the law, the court will not disturb his conclusions of fact, unless they are clearly in conflict with the weight of the evidence. Kimberly v. Arms, 129 U. S. 524, 9 Sup. Ct. 355.

The rule is clearly stated by Mr. Justice Brown in Davis v. Schwartz, 155 U. S. 636, 15 Sup. Ct. 237:

"As the case was referred by the court to a master to report, not the evidence merely, but the facts of the case, and his conclusion of law thereon, we think his finding, so far as it involves questions of fact, is attended by a presumption of correctness, similar to that in the case of finding by a referee, the special verdict of a jury, the findings of a circuit court under Rev. St. § 649, or in an ad-

miralty cause appealed to this court. In neither of these cases is the finding absolutely conclusive, as if there be no testimony to support it. But so far as it depends on conflicting testimony or upon the credibility of witnesses, or so far as there is any testimony consistent with finding, it must be treated as unassailable."

Applying this rule to the case before us, we must consider as established the facts found by the commissioner, that the injury to the libelant was caused by defective appliances used in loading the ship, without any contributory negligence on his part. These facts being established, the question remains, is the ship responsible? This depends upon the construction of the charter party. The charter party was for a lump sum, and only the freight room was hired; so the ownership of the vessel remained in the original owner, and the master and crew continued to be his servants. Scrutton, Charter Parties. 3.

The charter party provides:

"Charterers are to pay for loading cargo and compressing cotton in presses at loading point, but no other charges, and the stevedore to be appointed by them, who is to load steamer under captain's directions. Charterers are not to be held responsible for improper stowage."

So, although the cost of loading cargo and the selection of the stevedore are in the charterers, the work of loading and the stevedore himself are to be under the captain's directions. In other words, at no time does the master lose his proper place in control of his ship and everything connected therewith. The stevedore is not an independent contractor doing the work, which, when completed, is to be turned over to the master for his approval or disapproval; but he must load the steamer at all times under the direction of, and so subject to, the control of the master. See The Alejandro, 6 C. C. A. 54, 56 Fed. 621. And see, also, George W. Bush & Sons Co. v. Thompson, 13 C. C. A. 148, 65 Fed. 812.

The next provision in the charter party bearing on this question is:

"Steamer to furnish use of her tackle and engine drivers in loading cargo and trim or discharge her ballast, as charterers may wish, at her expense, and to work night and day if required."

It will be observed in the first extract from the charter party that all that is required from the charterers is that they pay for loading cargo, and also that they pay the stevedore, whom they can appoint; but, nevertheless, the loading shall always be under direction of the captain. Nowhere else but in the clause last quoted is there any mention of the appliances to be used. Nor does the record disclose any evidence on this point. The conclusion follows that these appliances were to be furnished by the ship. As the use of the appliances was for the loading of the ship, and as this loading was under the direction of the master, notice of their condition and imperfection was brought home to him. The case before us is not in any respect like that of The Persian Monarch, 5 C. C. A. 117, 55 Fed. 333, decided by circuit court of appeals of the Second circuit. In that case the ship had furnished safe appliances for loading, but the stevedores, instead of using them, used others on the ship, which were defective. For this the ship was not responsible. In the case at bar the only appliances for loading pig iron furnished by the ship were buckets

and the slings which were.used.   The stevedore, who was called by and who gave evidence for the claimant, testified that the buckets were more dangerous than the slings, and the use of them had been discontinued.   Under the circumstances stated, the vessel is responsible for the unsafe appliances.   The Rheola, 19 Fed. 926; The Kate Cann, 2 Fed. 241.

It is earnestly contended, however, that .the libelant was engaged in an employment whose dangers he knew, and whose risk he assumed. This is true.   But he assumed dangers arising from the employment itself; not extraordinary risks, least of all the risk of unsafe appliances.   Gardner v. Railroad Co., 150 U. S. 359, 14 Sup. Ct. 140, and . cases quoted; Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464.   Considering the whole case, we see no error in the court below.   The decree appealed from is affirmed, with costs to appellee.