LOWRY et al. v. UNITED STATES SHIPPING CO.

(District Court, S. D. New York. January 10, 1898.)

CHARTER PARTY—CHARTERERS' STEVEDORE—REBATE RECOVERABLE—WHARFAGE NOT.

A charter of the steamship Monkseaton gave the charterers the right to appoint a stevedore at the usual rates for loading, and provided that the steamer should pay $20 a day wharfage. The charterers sent the steamer to a railroad wharf where, in consideration of loading the railroad com-

pany's goods, no wharfage was charged. The stevedore appointed by the charterers was accustomed to make and did make a rebate to them upon the bills rendered for loading. *Held* that, in the accounts between the ship and the charterers, the latter were entitled to charge against the ship the stipulated wharfage, but must give credit for the rebate, since the appointment of a stevedore was a fiduciary act upon which they could make no profit, and because the usual rate for loading was, in fact, the amount charged less the rebate.

This was a libel in personam by E. Lowry and others against the United States Shipping Company to recover money alleged to be due from respondents as charterers of a steamship.

Convers & Kirlin, for libelants.

Cowen, Wing, Putnam & Burlingham, for respondents.

BROWN, District Judge. The above libel was filed to recover from the respondents two items, one of $181.19, a rebate from a stevedore's bill, and the other an item of $240 for wharfage, both of which were charged by the respondents as charterers of the steamship Monkseaton, against the libelants, as owners of the steamer, in the settlement of accounts under the charter made with the master at Hampton Roads, prior to the sailing of the vessel in June, 1896. These items appear distinctly upon a statement rendered by the respondents to the libelants subsequently to the settlement. The libel avers that neither item was a payment made, or an expense incurred by the charterers, and that they, therefore, had no right to charge either against the vessel.

These charges against the vessel were based upon the following provisions in the charter:

"Charterers to have the option of appointing the tally clerks, also the stevedore to load and stow & discharge the cargo—under the master's supervision—steamer paying expense of same at usual rates for first class work, and charterers to be in no way liable for improper stowage. * * *

"Steamer to haul to loading berth or berths as ordered by charterers, but if hauled more than once any necessary towage to be paid by charterers. Wharfage under this charter $20 per day, to be paid by the steamer."

The charter was executed at New York. It was a charter of affreightment only. It provided for loading at a usual safe wharf or dock in the port of Newport News ᵃⁿᵈ/ₒᵣ Norfolk in any rotation, as ordered by charterers, a full and complete cargo of lawful merchandise; and that the ship should proceed to Rotterdam and there "deliver the cargo agreeably to bills of lading on being paid freight in full of all port charges, pilotages, freight brokerages, and other charges customarily paid by steamers."

Under a charter of affreightment, the ship must bear all the ordinary expenses of the voyage, and the expense of loading, except as otherwise provided in the charter. In this case it was provided that extra expense for night work should be borne by the charterers. The master or the owners' agents would also have the right to employ or designate their own stevedore for loading. Here the option to appoint tally clerks and the stevedore was given to the charterers, with the stipulation, however, that the loading should be under the master's supervision, the steamer paying expense of same at usual rates for

first class work. Whatever may have been the precise business reasons for giving this option to the charterers—and several legitimate reasons are conceivable—it is not a legitimate reason and cannot be held a part of the contract, that it was to enable the charterers to make a profit out of the loading, by means of a rebate to the charterers on prices exacted from the ship. The appointment of the stevedore, if the charterers claimed and exercised the option given by the charter, was in my judgment a fiduciary act, which disables them from making any profit out of it. The Kendal, 56 Fed. 239.

Aside from this consideration, however, the qualification annexed to the option given to the charterers, viz.—"steamer paying expense of same [i. e. loading] at usual rates for first class work"—forbids the charterers to retain this rebate for their own benefit, because this qualification shows clearly that the ship was to pay only the "expense" of loading, that is, the actual expense; and second, that this expense could not exceed the usual rates for first class work. Here the rebate paid to the charterers by the stevedore shows that the full sum charged to the ship was not the real expense of loading, but was in excess of the actual expense; and the further fact, which was conceded upon the argument, that the rebate made by the stevedore to the charterers was in pursuance of the usual practice between him and the charterers, shows also that the rate charged to the ship was not their usual rate, but only a nominal rate, from which a rebate was customarily made. The defendants should, therefore, respond for this item.

2. Wharfage. The claim as to wharfage stands upon a different basis. The stipulation of the charter in this regard is absolute; viz. "wharfage under this charter $20 per day to be paid by the steamer." There is nothing in the context, and there are no other stipulations in reference to the same matter, which serve to modify or restrict the stipulation to pay $20 wharfage. The immediate context provides that the charterers shall pay for any necessary towage of the steamer, if hauled more than once in loading; and the agreement that the steamer shall pay $20 per day for wharfage, seems to me a stipulation with the charterers fixing that sum, which binds the ship to pay that amount, and by implication binds the charterers to pay any sum in excess of $20 per day that might be incurred. The charterers in taking this burden, took also the benefit of a less expense. Upon the facts stated in the argument, it appears that the reason why no separate expense was incurred for wharfage in this case was, that the wharf was owned by a railroad company and used exclusively in its business; and that as an inducement to deal with the company, and to take merchandise from the railroad company at its wharf, no wharfage was charged. The charterers had the right to take such lawful merchandise as they pleased, and at any usual wharf within the ports named. As it was the charterers, therefore, who exercised this option, both as to the merchandise to be carried, and the place at which it should be loaded, any benefit as respects wharfage offered by the railroad company for taking its goods was practically an inducement offered to the charterers of which they are entitled to the benefit.

The ship has no right to complain, because wharfage is a usual expense, which the ship is bound to pay; and the sum charged against her in this case is only what her owners expected and agreed to pay when the charter was signed. It is quite probable that when the charter was drawn up, the charterers intended to take the railroad company's goods, with the attendant exemption from wharfage charges; and that this was the reason for the unqualified provision that the ship should pay the amount named in the charter for wharfage, which the charterers would receive as one of the considerations for loading the railroad company's goods. The fact that the amount of $20 per day was agreed upon by the owners, whether they understood the precise reason of it or not, is sufficient evidence that it was a reasonable and customary charge, which the ship would ordinarily be bound to pay. The ship has no equity, therefore, to claim the benefit of the exemption from wharfage, contrary to her stipulation, since the considerations for the exemption of the ship from the usual charge of wharfage, moved wholly between the charterers and the railroad company. It was in effect, wharfage supplied by the charterers by reason of their own voluntary dealing with the railroad company upon terms to which they agreed. The charterers I find, therefore, are entitled to retain the wharfage charge.

The case, having been heard upon exceptions to the libel with a view to avoid unnecessary delay and expense in the taking of testimony, has been determined not alone upon the strict letter of the pleadings and exceptions, but upon the facts as well, which were in substance stated and agreed upon at the argument.