THE BENCLIFF.

(District Court, E. D. Pennsylvania. July 22, 1907.)

No. 11 of 1904.

1. SHIPPING—CONSTRUCTION OF CHARTER PARTY—DISCHARGE BY CHARTERER.

Under a charter party which required the vessel to discharge by night, as well as by day, if required by the charterer or consignee, but also gave the charterer the option to provide the stevedore for discharging, for which the vessel agreed to pay at not exceeding a specified rate, where he exercised such option, he is not entitled to charge for discharging a sum exceeding the stipulated rate because of night work, especially where by means of it he earned dispatch money under the charter.

2. SAME—SUIT TO RECOVER FREIGHT—ISSUES NOT MADE BY PLEADINGS.

In a suit in personam by a vessel owner to recover freight money from a charterer, the claim that under the cesser clause of the charter the sole remedy of the libelant was in rem against the cargo cannot be urged as a defense where it was not raised by the pleadings.

3. SAME—LIABILITY FOR PORT CHARGES.

Where a charter party provided that the freight specified should be "in full of primage, consulage, port charges, etc., as customary," and also that the vessel should, if required, discharge by night, as well as by day, she is liable for extra port charges incurred by reason of night work, although the discharging was done by the charterer under a provision giving him that option at a specified rate to be paid by the vessel.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 183.]

In Admiralty. Suit to recover freight. On final hearing.

Charles R. Hickox, for libelant.
Henry Flanders, for respondent.

J. B. McPHERSON, District Judge. This is an action in personam, brought by the libelant to recover from the respondent two sums of money that are averred to have been improperly deducted by his agent at his direction from the freight due for the carriage of a cargo in the steamship Bencliff. Originally it was sought to recover three items, but the dispute concerning one of them was settled after the suit was brought.

The facts, which are not in controversy, are as follows: In July, 1902, the libelant and the respondent entered into a charter party, whereby it was agreed, inter alia, that the Bencliff should proceed to the port of Bilbao and there load from the respondent's shippers a cargo of ore, which she was to deliver as directed by him at whichever of four specified ports in the United States he might select. Perth Amboy having been chosen, the cargo was in due season delivered at that port; and it is for certain stevedores' charges and for fees paid to the customs officials that the present suit is brought. These sums were deducted by the respondent's orders when his agent settled for the freight with the master, and the libelant contends that the deductions were improperly made; the argument being that under the charter party the payments in question should fall upon the respondent and not upon the ship.

Unquestionably, if the agreement of the parties had embraced nothing more than an undertaking on the part of the ship to carry and

deliver the cargo, and an undertaking on the part of the respondent to pay a specified sum as freight, the freight would not have been earned until the cargo was delivered, and the ship would have been bound to make whatever payments were necessary in order to enable her to fulfill the obligation to carry and deliver. But the agreement contains other provisions which modify the respective obligations to deliver and to pay, and it is by the construction of these provisions that the present dispute must be determined. Instead of undertaking to do the actual work of delivery herself, the ship gave to the respondent "the option of providing stevedore for discharging the cargo at port of discharge," but agreed to pay the cost of doing the work at the "current rate of 40 cents if discharged at New York or Perth Amboy." The respondent exercised this option, and employed a stevedore to do the work at a rate that is not disclosed by the evidence, but in all probability did not exceed 40 cents. Moreover, as the charter party further provided that the "ship is to load and discharge as rapidly as possible (if required), by night as well as by day, when required to do so by charterer, shipper or consignee," the respondent took advantage of this additional option—being probably stimulated thereto, in part at least, by a provision for "despatch money at the rate of 15 pounds sterling per day of twenty-four hours for any time saved in * * * discharging, payable by the ship to * * * charterer at discharging port"—and required the stevedores to work by night as well as by day. The result was that the cargo was unloaded quickly, and that the respondent earned thereby £207 10s. dispatch money, which was duly allowed by the ship and deducted from the freight without question. But, of course, work by night must be paid for, since a day's wage does not of itself compensate for such labor, and the men who work by night are not the same as those who work by day; and it is for the additional amount paid to the stevedores' servants for discharging the cargo at night that the libelant claims in the first item of the present suit. The respondent paid the money to the stevedore, but deducted it from the freight, claiming that a custom of the port authorized him so to do. There is no proof whatever of such a custom, and the final reluctant acquiescence of the master in the deduction does not bind the owner, if the respondent's claim was clearly erroneous. In my opinion nothing has been shown to justify it. As I have just said, there is no evidence whatever of such a custom—I lay aside a feeble effort to prove it by the obviously incompetent testimony of one witness—and the provisions of the charter party negative the claim decisively. The respondent was not bound to unload the cargo. He was merely permitted to do so, and, if he chose to undertake the work, the price he was to be allowed for it was distinctly specified. How he spent this money, whether in work by day or in work by night, or in both, was no affair of the ship. Her obligation to deliver was transferred to the respondent when he undertook the unloading himself in consideration of being paid a rate of 40 cents, and thereafter it was the respondent's duty, and not the ship's, to pay the wages of the men who handled the cargo. He could compel work by night as well as by day, but, if he chose both varieties of labor, he, and not the ship, was bound to pay for both. Moreover, he was earning dispatch money by this haste

in discharging, and he has, therefore, no equities to urge in his favor, even if the construction of the agreement were doubtful. In that event, also, as the charter party is one of his own printed forms, pre-. sumably prepared and adopted with his approval, any ambiguity in its provisions would be ordinarily resolved against him. But I see no ambiguity that calls for the application of this rule. It seems to me that the agreement is plain. The ship was bound to discharge if the respondent did not exercise his option. If he did exercise it, he was to receive 40 cents, which he could spend as he pleased, but the duty of discharging became thereupon his own, and the ship was relieved from this obligation.

The respondent's principal defense to this item, as it appeared upon the argument of the case, is the cesser clause of the charter:

"It is agreed that the charterer's liability as to all matters, before and after the shipping of the said cargo, shall cease as soon as the cargo is shipped, it being agreed that the captain shall have a lien on the cargo for freight, dead freight and demurrage."

This provision, it is argued, confined the remedy of the ship to an action in rem, and relieves the respondent from liability in the pending action. It is, I think, a sufficient reply to this defense to say that it was made too late. The answer did not set it up either originally or by amendment. The libelant's attention was not directed to it while the testimony was being taken; and it would, I think, be inequitable to permit the respondent to bring forward at the argument a substantial defense which is not included in the issues raised by the pleadings and the testimony. Moreover, it deserves careful consideration, which may well be deferred until the question is squarely raised and thoroughly argued, whether the cesser clause applies to a situation where the charterer is also the consignee, and, having obtained delivery of the cargo without paying the freight, afterwards makes a disputed claim growing out of the delivery itself. I express no opinion on this question, as the point has not been properly raised.

The respondent's claim for night work must therefore be disallowed.

The second item is for the fees paid for a customhouse permit to discharge at night, and for the services of the government inspectors and weighers during the same time. These charges were also paid by the respondent and deducted from the freight. In my opinion they stand on a different footing from the stevedores' wages and were properly deducted. They seem to me to be included in another clause of the charter party, which provides that the specified rate of freight shall be "in full of primage, consulage, port charges, trimming, pilotage, towage, etc., as customary." The items in question are certainly "port charges," and have nothing to do with the wages to be paid to the master stevedore and his men. The ship agreed to permit discharge by night as well as by day, and, if the result of this permission was to subject her to additional "port charges," she was bound to pay them because she had contracted to pay all such charges, and had made no exception whatever. If she had been delivering the cargo herself, and had been obliged to carry out the obligation to work by night as well as by day, I think her liability to pay these fees could scarcely be questioned; and I cannot see how she is relieved from the express agree-

ment to pay them, by transferring a separate obligation—to deliver the cargo—to the shoulders of the respondent. The second item of the libelant's claim must therefore be disallowed.

A decree may be drawn in accordance with this opinion, the total costs to be equally divided between the parties.