## THE BENCLIFF.

(Circuit Court of Appeals, Third Circuit. May 11, 1908.)

### No. 34.

1. SHIPPING—STEVEDORES' WAGES—CHARTER PARTY—CONSTRUCTION.

A charter provided that the charterer had the option of providing stevedores for discharging cargo at port of discharge, steamer paying for the same at current rate of 40 cents, and to provide cranes and winches with full necessary steam or hand power to work the same if required by the charterer, ship to load and discharge as rapidly as possible by night as well as by day when required to do so by charterer. The unloading was done by the charterer's nominees by day and night; brokers representing both the ship and the charterer. In the account rendered the brokers charged the ship 40 cents a ton for unloading and an additional bill of $210.90 for night work by the stevedores; the celerity of the discharge being such as to also entitle the charterer to $1,000 for discharge money. *Held* that, if the charterer elected to discharge both by day and night, the ship was only bound to furnish steam for the winches and pay the day discharge rate, and was not liable for extra pay to the stevedores for night work.

2. ADMIRALTY—LIBEL—AMENDMENT.

Where a libel in form ad personam was answered, defended, and decided as such, it was not error for the court to refuse to permit respondent to shift his ground of defense after decision so as to claim that an action in rem was the proper remedy.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

Henry Flanders, for appellant.

Convers & Kirlin, Henry R. Edmunds, and Charles R. Hickox, for appellee.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge. This was a libel in personam filed by the owners of the steamship Bencliff, the appellee, to recover back from Samuel, the appellant, a bill for stevedore wages which the Bencliff had paid him under protest. The parties entered into a charter party, whereby the Bencliff was to proceed to Bilbao, Spain, and there load for Samuel a cargo of ore for delivery at any one of four United States ports he might specify. The charter provided:

"Charterer has the option of providing stevedores for discharging the cargo at port of discharge, steamer paying for the same at the current rate of * * * 40 cents, if discharged at * * * Perth Amboy * * * steamer to provide cranes and winches with full necessary steam or hand power to work same both in loading and discharging if required by charterer. * * * Ship is to load and discharge as rapidly as possible (if required) by night as well as by day, when required to do so by charterer. * * * The captain to apply to and employ charterer's nominees at * * * port of discharge."

On arrival at Perth Amboy, the selected port of discharge, the unloading was done by Pim, Forwood & Kellock, the charterer's nominees, by day and night. In an account rendered, the brokers charged the ship the current rate of 40 cents per ton stipulated for in the charter and an additional bill of $210.90 for night work by the stevedores. The celerity of discharge was such that Samuel was allowed about $1,000 for discharge money. The captain of the Bencliff paid the $210.90, and on his libel to recover the same the court below entered a decree in his favor. From such decree Samuel appealed.

After careful examination we find no reason to differ from the conclusion reached by that court. While it is true that, as provided by the charter, both charterer and vessel had the same brokers, yet under the proofs we are satisfied that they acted as Samuel's agent in discharging this cargo. The charter, which was of Samuel's own draft, gave him the option to discharge and fixed the price the ship should in such case allow him at 40 cents per ton. This rate per ton was in no way different than if a lump sum had been named. Whether Samuel discharged by day or by night, what he paid stevedores, and whether his bargain with them was for a lump sum or per ton, was no concern of the ship. The mode of discharge, if Samuel exercised his option, was for him to determine. If he chose to discharge by night, he could require the ship to permit such night discharge and furnish steam for the winches. If he incurred greater expense by night work, he could recoup his expenses by the discharge money he thereby earned. The option to discharge being manifestly inserted by Samuel for his own benefit, and the discharge having been so conducted as to inure to his gain, the brokers who directed the work are presumed to have acted therein as his agents. The Turgot, 11 Pro. Div. 21.

The Bencliff's captain testifies he did not authorize the employment of the stevedores at night, and the brokers' clerk says that:

"Samuel instructed us to require the ship to discharge at night as well as by day and instructed us to deduct the extra charge for stevedores' night work from the freight."

Moreover, the account rendered by the brokers indicates it was for disbursements made by them as Samuel's agents. As stated, the ship, if required, was bound to provide winch facilities, but the account shows the stevedore firm of Brady & Gioe, who furnished the night work, also furnished winchmen, and for them the ship was charged in the account stated. Now, if this account was one rendered by the ship, through its broker, against the charterer, a charge for a winchman, which the ship was bound to furnish, would not have entered therein. The fact that such charge is in the account shows that Samuel, and not the ship, hired and paid the winchman, and in the account rendered by his broker against the ship he demanded and received allowance therefor from the ship. The court made no mistake in holding that the brokers in discharging the ship were acting as Samuel's agents.

Nor do we think it committed error in refusing, after its opinion was rendered, to allow the respondent to shift his ground of defense. The libel was in form ad personam. It had been answered, defended, and decided as such. If this amendment, whereby the defense was sought to be raised that an action in rem was the proper remedy, had been allowed and succeeded, all the time used and expense incurred by the libelant through the respondent's misleading course would have gone for naught. Had this been done, the power of amendment which courts of admiralty concededly have (The Charles Morgan, 115 U. S. 75, 5 Sup. Ct. 1172, 29 L. Ed. 316) would have been misapplied.

The decree of the court is therefore affirmed, at appellant's cost.