## THE AUGUST.

### A/S D/S MATHILDA v. BETHLEHEM STEEL CO.
### No. 13710.

District Court, E. D. New York.
Sept. 8, 1933.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (by Ray Rood Allen and Norman M. Barron, both of New York City), for libelant.

Simpson, Thacher & Bartlett, of New York City (by Albert C. Bickford, of New York City), for respondent.

CAMPBELL, District Judge.

This suit is brought to recover the sum, of $852.70, deducted by the charterer's agent from gross freight payable to the libelant under a charter party between the libelant, as owner of the steamship August, and Manganexport, G. m. b. H., as charterer. The deduction was made under clause 2 of the charter party as a charge for the use of shore cranes employed in unloading a cargo of ore at Baltimore, Md. The charter party is dated December 11, 1931, and was for the carriage of a cargo of ore from Nicolaieff, in Soviet Russia, to Baltimore, Md.

Freight was to be paid at the rate of $3.10 per ton 20 hundredweight delivered. The total weight of the cargo transported and delivered was 8,527 tons, and the gross freight thereon at the charter party rate of $3.10 per ton amounted to $26,433.70, from which, according to the charter party, the respondent or its agents or the charterer or its agents were entitled to make deductions for advances, discharging expenses, etc., so that only the net freight after such proper deductions was payable to the libelant. In computing and paying the net freight, the charterer's agents deducted 10 cents per ton for the use of respondent's shore cranes, and the sole question is whether or not the deduction of the said sum of $852.70 was proper under the charter party.

In the stipulation of facts on which this suit was tried, it is stipulated as follows: "If libellant is obligated to pay cranage in the circumstances of this case, in addition to the 55 cent rate for discharging, libellant admits that 10 cents per ton would be a reasonable rate. But libellant denies that it was obligated to pay any cranage whatsoever."

This removes any question of the reasonableness of the charge and leaves only the construction of the contract to determine whether a charge for cranage was proper.

So much of clause 2 as is necessary for consideration as originally printed reads as follows: "Ship paying for discharging one shilling per ton on quantity delivered, also cranage if delivered in a Scottish port."

Before execution, the charter party was changed by striking out the words "one shilling," and interlining in handwriting in black ink the words, "55 cents U. S. currency," and by striking out the words, "discharged in a Scottish port," and interlining in typewriting in red ink the words "shore cranes are employed," thus making the clause in the charter party as executed read as follows: "Ship paying for discharging 55 cents

U. S. currency per ton on quantity delivered, also cranage if shore cranes are employed."

 This clause seems to be free from ambiguity, and should be construed as it plainly reads, and of course most strongly against the one who prepared the contract, and also as intending to change the printed form of contract by the interlineations in handwriting and typewriting, which must be considered as overruling any portions of the printed contract which are inconsistent with them.

 It seems to me to have been the intention of the parties, as expressed in the charter party, that the ship should pay the expense if shore cranes are employed.

Libelant contends that the charterer was only entitled to be reimbursed for such charges as it might have to pay, but the contract does not so provide.

The duty of discharging is a duty resting on the ship, and the ship furnishes winches and men to operate them, but in the contract in question provision is made for paying a certain sum by the ship to the charterer's agents for discharging and also cranage if shore cranes are employed.

If the ship's winches were used, the steam and men would be furnished at the expense of the ship. What reason is there if the charterer's agent employs its shore cranes why it should not be paid its reasonable expenses for the steam used, labor employed in operation, and the wear and tear of the cranes?

This would be so even if we assumed the correctness of libelant's argument, that the rate to be paid when shore cranes were employed, not being fixed, the charterer or its agent could not make money at the expense of the shipowner, but is limited to reimbursement, because no question is presented in this case as to the reasonableness of the charge of 10 cents a ton, as that has been stipulated as reasonable if any charge is to be allowed. Lowry v. United States Shipping Co. (D. C.) 84 F. 685, cited by libelant, is not in point.

 That a charge has not been made for shore cranes employed by the same charterer's agent for cargoes discharged at Baltimore from vessels in a majority of cases where the vessels of various owners had been chartered by the same charterer, even in cases where such provision was contained in the charter party, does not seem to me to control the construction of the charter party in this case.

We know nothing of the reasons moving the parties in those cases, and a waiver of its rights in a particular case does not deprive the charterer or its agents from asserting its rights in this case.

The words stricken out and the words interlined on the printed form of charter party clearly show the intent to fix the expense for stevedoring at 55 cents United States currency a ton instead of one shilling, and to require payment of cranage at any port where shore cranes are employed, instead of limiting cranage to cargoes discharged in Scottish ports.

I see no force to the libelant's argument based on the dictionary definitions of the word "cranage," which follow:

Century Dictionary: "1. The liberty of using at a wharf a crane for raising wares from a vessel. 2. The price paid for the use of a crane."

Bouv. Law Dict., Vol. 1, page 725: "A toll paid for drawing merchandise out of vessels to the wharf; so-called because the instrument used for the purpose is called a crane."

On the contrary, those definitions sustain my view, that what the ship contracted to pay, if shore cranes were employed, was the fair, reasonable, and customary charge for such services at the place of discharge, and not what the charterer or its agent should pay to some one else without any right to collect for the use of shore cranes employed, if furnished by them or either of them.

This construction is supported by other provisions of the charter party, notably that portion of clause 2, which reads as follows: "That the said ship * * * shall with all convenient speed proceed to (naming several ports, including the Port of Baltimore) and there deliver the same as customary, when, where and as directed by the consignee"— thus giving the charterer or its representative the option to direct the method by which the cargo should be discharged.

And also by the provision of clause 7, which reads as follows: "The ship to load and discharge as rapidly as possible, and give use of steam winches and steam free of expense, and crew to drive the winches, if permitted by local labor regulations, otherwise shore hands to be employed, and owners to pay cost of same."

The word "owners" in the last-quoted clause of the charter party was substituted in said charter party in red ink for the word "charterers."

This clearly shows, as I have hereinbefore pointed out, the duty of the ship to furnish winches, steam, and operators in discharging cargo, and, read with that portion of clause 2 which provides for charges against the ship for cranage, they show that, when the ship is relieved at the option of the charterer from furnishing winches, steam, and operators, by the employment of shore cranes, the ship is required to pay cranage; that is, the fair, reasonable, and customary charges for the use of cranes at that port.

The word "employed" as used with reference to shore cranes means "used," and it is for their use, whether owned by the charterer or its agents or hired by them, that the ship is bound to pay.

The following cases have been cited by counsel:

Lowry v. United States Shipping Co., supra, holds that, when the charter party authorized the charterer to have stevedoring done, but no specific rate was agreed upon between the charterer and the owner, the charterer could not charge the owner with the amount of the stevedore's bill as presented, the charterer having received a rebate from the stevedore, and, the owner having paid the amount of the bill as presented, was entitled to recover the rebate. This is quite different from this case where there is no question of any rebate, but a fair, reasonable, and customary charge made for a service rendered, of a kind for which the ship agreed to pay.

In the same case there was a provision in the charter party that "wharfage under this charter $20 per day to be paid by the steamer," and it was held to authorize the charterer to charge the owner $20 per day wharfage irrespective of what the charterer might be required to pay.

Muller v. Spreckels (D. C.) 48 F. 574, 575. In that case the charter party did not specify any wharfage rate, and the consignee whose wharf the ship used charged wharfage at the rate prevailing at the port of discharge.

The Bencliff (D. C.) 155 F. 242, affirmed (C. C. A.) 161 F. 909. In that case the charter party required the vessel to discharge by night as well as by day, if required by the charterer or consignee, and also gave the charterer the option to provide the stevedore for discharging, for which the vessel agreed to pay not exceeding 40 cents per ton. The charterer employed a stevedore and required night work for which he incurred additional expense over and above the 40-cent rate, and the court held that the charterer could not recover from the ship more than 40 cents per ton.

Consideration of these cases does not furnish authority for a construction other than I have found is the plain meaning of the clause in question. On the contrary, in view of the conceded reasonableness of the charge in this case, I believe they support my construction.

The copy of the Prunus Arbitration award has neither been examined nor considered by me, as I do not consider it a legal precedent.

The libelant has failed by a fair preponderance of the evidence to establish that the deduction by the charterer or its agent of $852.70 as cranage was improper.

The respondent is entitled to a decree against the libelant dismissing the libel, with costs. Settle decree on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Rules in Admiralty, proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the rules of this court.