## THE ORANMORE.

### (Circuit Court, D. Maryland. December 15, 1885.)

**1. ADMIRALTY—LOSS OF CATTLE—NEGLIGENCE—LIBEL—DISMISSAL.**

Where cattle died in transit because of the negligence of the shipper in failing to provide sufficient bedding and ropes with which to tie them in the stalls provided by the ship, a libel against the ship to recover for such loss will be dismissed.

**2. BILL OF LADING—CONSTRUCTION—FOREIGN LAW—APPLICATION.**

A bill of lading of an English ship provided that all questions arising thereunder against the ship or her owners should be determined by English law in England. *Held,* that such provision was valid, and that the English law governed a libel in admiralty for the loss of property under such bill of lading by the shipper, who was a resident of the United States.

Appeal from the District Court of the United States for the District of Maryland.

Libel by Edward Morris, by August Rieser, his next friend, against the British steamship Oranmore, to recover for 67 head of cattle which died and were thrown overboard, and for depreciation in value of others, during their transportation from Baltimore to Liverpool in 1885. The libelant, a citizen of the United States, shipped on the steamship 320 head of cattle, to be carried on the upper between-decks, and received through his agent a bill ,of lading which recited that the shipment was made under, and subject to the conditions of, a "live-stock freight contract," dated Baltimore, November 19, 1884, and signed by libelant and his father, by which they agreed, on the terms therein expressed,`to ship as many cattle as could be carried on the upper between-decks of five of the Johnson Line steamers, plying between Baltimore and Liverpool, of which the Oranmore was one, for two consecutive voyages of each of the five steamers, commencing with the voyage in question. The sixteenth clause of the contract provided that "any questions arising under this contract or bill of lading against the steamer or her owners shall be determined by English law in England." The bill of lading also contained the following exceptions: "* * * or any other perils of the sea, rivers, navigation, or of land transit, of whatsoever nature or kind, and whether any of the perils, causes, or things above mentioned, or the loss or injury arising therefrom, be occasioned by the wrongful act, default, negligence, or error in judgment of the owners, pilot, master, officers, crews, stevedores, or other persons whomsoever, in the service of the ship, or for whose acts the shipowner would otherwise be liable, or by unseaworthiness of the ship at the commencement of the voyage (provided all reasonable means have been taken to provide against such unseaworthiness), or otherwise, howsoever excepted. The shipper provides fodder and attendance for the live stock, and takes all responsibility in their shipping, carriage, and discharge, and for the accidents, damage, and mortality that may happen to them, from whatever cause arising, in loading, discharging, and during the voyage. * * * The steamer provides fittings as customary upon steamers of this line, and also provides a condenser for distilling water; but the steamer is not to be held responsible for any defect or insufficiency in said fittings or in the condenser, or any of its appurtenances, or in the ventilation of the ship, the same being hereby approved of by the shipper; nor for any claim, notice of which is not given before the delivery of the live stock by the steamer." The libel alleged that the loss occurred by reason of the insufficient

fittings of the stalls, which the steamer contracted to provide for the cattle. The defense is that the fittings were sufficient, and that the cattle were, injured and lost by the negligence of the cattlemen sent by libelant to feed and care for them on the voyage, and by the insufficient amount of bedding put under them by the cattlemen, and by the weakness of the head ropes furnished by the shipper; also, that the exceptions in the bill of lading are to be interpreted according to the English law, and that by the English courts such exceptions would relieve the ship from liability, though the losses occurred by reason of the insufficiency of the cattle fittings. From a decree dismissing the bill (24 Fed. 922), libelant appeals. Affirmed.

Sebastian Brown and John C. Richberg, for appellant.

Brown & Brune, for appellee.

### Findings of Fact.

BOND, Circuit Judge. (1) Edward Morris, of Chicago, the libelant below, under and in pursuance of the live-stock freight contract and the bill of lading (Exhibits A and B) filed with the libel in this case, shipped alive, and in apparently good condition, 320 head of cattle, to be delivered at Liverpool or Birkenhead, England, as provided by said contract and bill of lading. (2) By the said contract and bill of lading the shipper was to provide sufficient attendants, ropes, bedding, food, and necessaries for the care and use of the cattle, and the steamer was to provide stalls or pens for the cattle. The steamer provided stalls or pens for the cattle, and fittings, as required by the contract and bill of lading. The shipper did not provide a sufficient number of men for the care of the cattle, nor a sufficient quantity of bedding, nor sufficient or proper ropes, for the safe transportation of the cattle. (3) By the negligence and inefficiency of the foreman of the cattlemen and his assistants, and by the want of proper and sufficient bedding and ropes, 67 of said cattle died in the course of the voyage to Liverpool. (4) The cattle fittings on the Oranmore on the said voyage were properly constructed, in accordance with the provisions of the contract and bill of lading, and were approved and passed as good and sufficient by the inspector of underwriters interested in the ship and all the cargo, except Morris' cattle. Morris did not insure his cattle for said voyage, and Morris accepted the fittings then on the steamer. (5) The sixteenth article of the live-stock freight contract contained the provision that any questions arising under that contract or the bill of lading against the steamer or her owners were to be determined by English law in England. (6) By the English law, all the provisions of the live-stock freight contract and the bill of lading were lawful and valid.

### Conclusions of Law.

1. The loss having been caused by the default of the libelant and his agents, the libel must be dismissed, with costs.

2. The English law governs the case.

3. Under the provisions of the live-stock freight contract and the bill of lading, the steamer and her owners are free from liability for the losses sustained by the libelant, and the libel must be dismissed, with costs.