## THE KENSINGTON.

(Circuit Court of Appeals, Second Circuit. May 25, 1899.)

### No. 147.

1. SHIPPING—DESTRUCTION OF PASSENGER'S BAGGAGE—NEGLIGENT STOWAGE.

Libelants were passengers on a transatlantic steamer, and their trunks, constituting their baggage, with those of other passengers, were broken to pieces, and the contents destroyed, during the voyage. The vessel encountered unusually rough weather on the passage, and rolled heavily. A witness for libelants, who entered the compartment where the baggage was stowed immediately on the opening of the hatch at the end of the voyage, testified that he examined carefully, but could find no evidence that the trunks had been lashed or otherwise secured against movement in rough weather, and the compartment was not filled. *Held* that, in the absence of any evidence on the subject from claimants, such testimony was sufficient to support the libelants' contention of negligent stowage.

2. SAME—CONTRACT OF CARRIAGE—PROVISION EXEMPTING CARRIER FROM LIABILITY.

Where both carrier and passengers are citizens of the United States, and the place of completion of the contract of carriage is within this country, a stipulation for exemption from liability in the contract, authorized by the law of a foreign country, by which the contract is by its terms to be governed, but which is contrary to the public policy of this country, is not enforceable in its courts.

3. SAME—HARTER ACT.

The provisions of section 2 of the Harter act as to the limiting of liability by bills of lading or shipping documents do not apply to passenger tickets.

4. SAME—PASSENGER TICKETS—PROVISIONS RELATING TO BAGGAGE.

A provision in a passenger ticket relating to a limitation of the carrier's liability for loss of baggage, plainly printed in the face of the ticket above the signatures of the ship's agent and the passenger, is a part of the contract.

5. SAME—LIMITATION OF LIABILITY FOR LOSS OF BAGGAGE—VALIDITY.

A stipulation in a passenger ticket for second-cabin passage which limits the liability of the carrier for loss of baggage to 250 francs, unless the passenger declares the value of his baggage in excess of such amount, pays for the transportation of the excess in proportion to its value, and takes a bill of lading therefor, is not so unreasonable as to be void as against public policy.

6. SAME—SCOPE OF LIMITATION.

Such a provision, though in terms limiting the liability of the "shipowner or agent" only, inures to the benefit of the ship itself, when sought to be held by proceedings in rem solely on the ground that the owner did not fully perform the contract.

Appeal from the District Court of the United States for the Southern District of New York.

These are cross appeals from a decree of the district court (88 Fed. 331) holding the libelants entitled to recover the equivalent of 250 francs apiece. The facts sufficiently appear in the opinion.

Roger Foster, for libelants.

H. G. Ward, for claimants.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. On December 2, 1897, the libelants, citizens of the United States, and residents of New Jersey, being at

the time in Paris, France, purchased of an agent of the claimant, a New Jersey corporation, a ticket for their passage from Antwerp to New York by the British steamer Kensington, of the Red Star Line. They proceeded to Antwerp, where on December 10th they paid the balance of the purchase money, delivered their trunks to the vessel, and received a baggage check stating that said trunks were shipped "subject to the conditions contained in the company's ticket and bill of lading." The ticket, which is dated December 2, 1897, begins with a recital of the names of the passengers, and numbers of state-rooms and berths, and states that it "is good for second-cabin passage of the persons named in the margin  *  *  *  by the British steamship Kensington from Antwerp on the 11th of December,  *  *  *  unless prevented from unforeseen circumstances, with 20 cubic feet of personal baggage for each adult passenger free of charge, excess being charged for at the rate of 125 francs per cubic foot." Immediately succeeding is the caption, "Notice to Passengers," and these words, "It is a condition upon which this ticket is granted, and is mutually agreed for the consideration aforesaid, that"— Here, as the district judge finds, follow 10 paragraphs in type somewhat smaller than the preceding type, but perfectly clear and legible, stating numerous conditions. The whole concludes with the clause: "All questions arising hereunder are to be settled according to Belgian law, with reference to which this contract is made." Then follows the signature, "John Macklin, for General European Agents." The relevant conditions included in the above-mentioned 10 paragraphs are these:

"(c) The shipowner or agent are not under any circumstances liable for loss, death, injury, or delay to the passenger or his baggage arising from the act of God, the public enemies, fire, robbers, thieves of whatever kind, whether on board the steamer or not, perils of the seas, rivers, or navigation, accidents to or of machinery, boilers, or steam, collisions, strikes, arrest or restraint of princes, courts of law, rulers, or people, or from any act, neglect, or default of the shipowner's servants, whether on board the steamer or not, or on board any other vessel belonging to the shipowner.  *  *  *  The shipowner will use all reasonable means to send the steamer to sea in a seaworthy state and well found, but does not warrant her seaworthiness. (d) The shipowner or agent shall not under any circumstances be liable for any loss or delay of or injury to passengers' baggage carried under this ticket beyond the sum of 250 francs, at which such baggage is hereby valued, unless a bill of lading or receipt be given therefor, and freight paid in advance on the excess value at the rate of one per cent., or its equivalent, in which case the shipowner shall only be responsible according to the terms of the shipowner's form of cargo bill of lading in use from the port of departure."

When their baggage was delivered to the company at Antwerp on December 10th, no statement was made of its value, and no freight was paid on its excess over 250 francs. The trunks were stowed in the after part of what is known as "No. 2 Upper Steerage Deck." Upon the arrival of the steamer in New York, it was discovered that the libelants' trunks, and baggage of other passengers, which, with some crates of china, had been stowed there, had been broken to pieces, and the contents of the trunks destroyed by water, dye, and dirt.

1. The first contention of the claimant upon this appeal is that the district judge erred in holding that the claimant was bound to

give proof of good stowage. There was evidence that the voyage was one of exceptional roughness; that on December 20th the steamer labored so heavily that she had to heave to for 14 or 15 hours, which had not previously occurred in the master's experience of 23 years; that she is a steamer of over 8,000 tons gross register, from 14 to 15 knots speed, and accustomed to make the trip in 10 days, but on the voyage in question she took 12 days; that the clinometer indicated that she rolled from 38 to 45 deg. either side. Upon these facts it is insisted that enough appears to show that the loss occurred by a peril of the sea, and that in this stage and posture of the case the burden was upon the plaintiffs to establish negligence of some kind on the part of the ship. In support of this contention, counsel cites Clark v. Barnwell, 12 How. 272; The Victory, 168 U. S. 423, 18 Sup. Ct. 149; The Neptune, 6 Blatchf. 193, Fed. Cas. No. 10,118. There was evidence, however, given by one of libelants' witnesses, who was present when the hatch was removed, that he descended immediately, and that, although he examined carefully, he could find no indications that the contents of No. 2 upper steerage had been lashed or otherwise secured against movement in rough weather. It is true that at the time of his examination the contents of the compartment were in such a chaotic state that the inferences to be drawn from his failure to discover any evidence of lashing down are not particularly strong; but, in the absence of any testimony whatever on the part of the ship as to how such contents were stowed and secured against the movements incidental to rough weather (the compartment was not filled), the evidence is sufficient to support the libelants' contention.

2. The claimant further contends that it should have the benefit of the provision in the contract of carriage exempting it from liability for the act, neglect, or default of its servants; such stipulation being authorized by the Belgian law. In reply it is sufficient to refer to Worsted Mills v. Knott, 27 C. C. A. 326, 82 Fed. 471, in which a majority of this court held that such a stipulation, being against the public policy of this country, was not enforceable by its courts. We are unanimous in the opinion that it cannot be enforced where both parties to the contract are citizens of the United States, and the place of completion of the contract is within this country. We concur also in the conclusion of the district judge that the provisions of the second section of the Harter act as to bills of lading and shipping documents do not apply to passenger tickets.

3. The main contention of the libelants is that the stipulation in the ticket against liability for injury to baggage in excess of the stated value of 250 francs is void, either because it did not amount to a contract, or because it is contrary to public policy, or because the sum named (250 francs) is unreasonably small. The same question was discussed by this court in The Majestic, 9 C. C. A. 161, 60 Fed. 624. That decision was reversed by the supreme court (The Majestic, 166 U. S. 375, 17 Sup. Ct. 597) on the ground that the conditions or limitations relied upon in that case "were not included in the contract proper, in terms or by reference"; being printed on the back without any reference in the contract to such indorsement. In

the case at bar, however, the clause relied upon is plainly included in the contract itself, above the signature of the ship's agent; and the reasoning of the opinion of this court in The Majestic, supra, applies. However unreasonable would be a "condition" attempting to relieve the carrier entirely from liability in excess of some named amount, there seems to be no impropriety in the carrier's requiring the passenger to declare the value of his baggage in excess of such named amount, to take regular bill of lading therefor, and to pay for its transportation in proportion to its value, with the proviso that, if he fails so to do, the carrier shall not be liable. As to the question whether the sum named (250 francs) is too small, the supreme court, in The Majestic, supra, intimated some doubt as to the reasonableness of £10 in the case of a first-cabin passenger's baggage, but rendered no decision thereon. In view of the circumstance that the condition complained of contained an offer to carry the excess value under a regular bill of lading, we are not prepared, in the absence of authority, to hold that 250 francs is an unreasonable valuation for personal baggage of a second-cabin passenger not thus carried.

The proposition contended for, that the clause in question provides only for the relief of the "shipowner or agent," and does not inure to the benefit of the ship itself, which in this suit is called upon to respond only because, as is alleged, the owner did not fully carry out its contract, seems to be without merit. The decree of the district court is affirmed, but, since both sides appealed, without interest or costs.