## THE NEW ENGLAND.

(District Court, D. Massachusetts. July 15, 1901.)

No. 1,154.

1. CARRIERS OF PASSENGERS—LOSS OF BAGGAGE—EVIDENCE.
   Where a passenger's trunk, which when delivered by her to a steamship company contained her wearing apparel, could not be found at the end of the voyage, and when afterwards forwarded to her was empty, and the company refused to give any explanation, and when sued for the loss introduced no evidence as to its care or treatment of the trunk while in its possession, the court is justified in finding that it was broken open and rifled by the company's servants.

2. SAME—LAW GOVERNING CONTRACT—STIPULATION FOR EXEMPTION FROM LIABILITY FOR NEGLIGENCE.
   A provision in a ticket, issued by an English steamship company to a passenger in the United States, for passage from an American to an English port, that the contract shall be governed by the English law, is ineffectual to render valid a stipulation exempting the company from liability for the negligence of its servants in respect to the passenger's baggage, which is contrary to the public policy of the United States.

3. SAME—LIABILITY FOR LOSS OF BAGGAGE—VALIDITY OF LIMITATION.
   Conceding the right of a carrier to stipulate for a reasonable restriction of its liability for loss of a passenger's baggage, a provision limiting such liability to $50, in a ticket for first-cabin passage across the Atlantic, in a first-class steamship, is not reasonable, and will not be enforced, especially where the provision was not called to the attention of the passenger, and the loss resulted from theft or conversion by the carrier's servants.

In Admiralty. Action by passenger to recover for loss of baggage.

Walter C. Cogswell, for libelant.

Thomas J. Gargan and Sewell C. Brackett, for claimant.

LOWELL, District Judge. In this case, the libelant, a passenger, delivered to the Dominion Steamship Company, at its dock in Boston, alongside the steamship New England, a trunk containing suitable wearing apparel for herself only. When she arrived at Liverpool the trunk was not to be found, but several days later was forwarded to the address she had left with the company's agent at Liverpool. At the time she received the trunk its lock had been tampered with, and when that was forced the trunk was found empty. The steamship company, though pressed in correspondence by the libelant, and though challenged in open court, failed to explain the delay in delivery, or to introduce any evidence concerning the treatment of the trunk while detained in its hands. This failure of the

libelee to introduce evidence within its sole possession justifies the court in finding that the trunk was broken open and rifled by the company's servants, and that this fact became known to the managers. Whether the conversion occurred in Boston, at sea, or in the British dominions does not appear. The inference regarding the conversion is strengthened by the discourteous letters written by the company's managers in Liverpool to the libelant, a woman traveling alone, when she pressed them with inconvenient questions.

The passenger ticket stated on its face, and above the signature of the company's agent:

"The company will use all reasonable means to insure the ship being sent to sea in a seaworthy state and well found, but is not otherwise liable for loss of, or injury to, the passenger or his luggage, or delay in the voyage, whether arising from act of God, queen's enemies, perils of the sea, rivers, or navigation, barratry or negligence of the company's servants (whether on board the steamer or on shore), defect in the steamer, her machinery, gear, or fittings, or from any other cause of whatsoever nature. The passenger shall not be liable, in respect of his luggage or personal effects, to pay, or to be entitled to receive, any general average contribution. It is further agreed that the company shall not be held liable in excess of fifty dollars for loss or injury to specie, money, jewelry, bullion, precious stones, or other valuables (unless they are given to the purser, and a special receipt given therefor), or loss of or injury to baggage, unless the value of the same be declared before shipment, and freight paid accordingly. It is further agreed that passengers shall see that baggage required during the voyage shall be distinctly labeled, and, in the event of neglecting so to do, the company shall in no manner be held liable for its loss or delay in delivery. It is further agreed that all questions arising on this contract shall be decided according to English law."

According to the English law, common carriers may exempt themselves by express contract from responsibility for losses occasioned by the negligence of their servants. By the law of this country, as laid down in the opinions of the supreme court, such an express contract is contrary to public policy, and consequently void. "It may therefore be assumed that the stipulation now in question [a stipulation similar to that contained in the clause of the ticket first above quoted], though invalid by our law, would be valid according to the law of Great Britain." Liverpool & G. W. S. Co. v. Phenix Ins. Co., 129 U. S. 397, 447, 9 Sup. Ct. 469, 474, 32 L. Ed. 788, 794.

This court has therefore first to determine whether the question of public policy is to be answered according to English opinion or that prevalent in the federal courts. In spite of the clause of the ticket last quoted, Judge Nelson held in this district that the English law did not govern, and that the attempt to exempt the company from liability for the negligence of its servants had failed. The Iowa, 50 Fed. (D. C.) 561. The matter has not been determined by the supreme court, though discussed by that court more than once. In Liverpool & G. W. S. Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788, much stress was laid upon the intention of the parties in determining what law was to govern; but on page 462, 129 U. S., page 479, 9 Sup. Ct., and page 799, 32 L. Ed., it was expressly stated that "the present case does not require us to determine what effect the courts of the United States should give to this contract if it had expressly provided that any question arising under it should

be governed by the law of England." In Compania de Navigacion la Flecha v. Brauer, 168 U. S. 104, 118, 18 Sup. Ct. 12, 42 L. Ed. 398, the supreme court again expressly declined to pass on the question, while citing several cases which support Judge Nelson's decision in The Iowa. In Knott v. Worsted Botany Mills, 179 U. S. 69, 21 Sup. Ct. 30, 45 L. Ed. 90, a stipulation that the law of England should govern was held ineffective against the provisions of the Harter act; and in Calderon v. Steamship Co., 170 U. S. 272, 18 Sup Ct. 588, 42 L. Ed. 1033, the public policy of this country expressed in the Harter act was likened to the general public policy which prevents a carrier from exempting himself from liability for his servant's negligence. In the inferior federal courts the weight of authority is with Judge Nelson. The Iowa was expressly approved in Worsted Mills v. Knott, 27 C. C. A. 326, 82 Fed. 471, by the circuit court of appeals for the Second circuit. A like provision inserted in a passenger's ticket between Belgium and New York, the steamer being American, was held void by the same court in The Kensington, 36 C. C. A. 533, 94 Fed. 885. See, also, The Energia (D. C.) 56 Fed. 124; Lewisohn v. Steamship Co. (D. C.) 56 Fed. 602; The Hugo (D. C.) 57 Fed. 403; The Glenmavis (D. C.) 69 Fed. 472. The authority of these cases outweighs that of The Oranmore (D. C.) 24 Fed. 922, which was affirmed in the circuit court, without any statement of reasons, by Judge Bond. 92 Fed. 396. The opinion of Judge Morris in the last-mentioned case treats the matter as one to be determined by the intention of the parties: but, as was said by Judge Butler in The Glenmavis:

"The intent of the parties in this regard as thus expressed is therefore immaterial. In every instance where the courts have declared such stipulations void, it has, of course, been against the express agreement of the parties. We have determined that such contracts are harmful and wrong; that they tend to encourage negligence, and justify oppression; that they affect injuriously, not only the immediate parties, but the public at large; and that they are therefore unlawful." 69 Fed. 476.

It is true that in The Majestic, 9 C. C. A. 161, 60 Fed. 624, it was held that where the steamer was English, and the contract made in England, the English law governed, and was enforceable in the federal courts, in spite of the public policy of the United States; and this even in the absence of a clause expressly providing for the application of the English law. The supreme court, in reversing the decision of the circuit court of appeals for the Second circuit, treated the question as an open one by holding that the English and American law was the same when applied to the facts of the particular case. The Majestic, 166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039. The supreme court has not decided that the English law ever can be made to govern in an action brought in a federal court, so as to exempt a carrier from liability for his servant's negligence. And it has implied the contrary in The Queen of the Pacific, 180 U. S. 49, 56, 57, 21 Sup. Ct. 278, 45 L. Ed. 419. The circuit court of appeals for the Second circuit, which decided Knott v. Botany Mills and The Kensington after deciding The Majestic, did not determine in the earlier case that, if the contract be made in this country, it

is possible to override the public policy of this country by a stipulation that the contract shall be governed by the law of England. The court merely agreed with the remark of Judge Brown: "It is no part of the law or policy of this country to invalidate the contracts of parties lawfully made abroad, so far as respects performance there, the acts being neither criminal by our law nor mala in se." The Trinacria (D. C.) 42 Fed. 863, 864. Upon the whole, the weight, both of authority and of sound reasoning, renders ineffectual the stipulation referred to, and the United States law governs this case. Following The Rosedale (D. C.) 88 Fed. 324, affirmed 92 Fed. 1021, and The Kensington, 94 Fed. 887, the court holds that the Harter act is inapplicable to this case.

In The Kensington, above cited, it was held that, while a steamship company could not by any device exempt itself from liability for the negligence of its servants, yet it might, without offending the public policy of this country, limit the extent of that liability for injury to the baggage of a second-class passenger by the following clause:

"The shipowner or agent shall not, under any circumstances, be liable for any loss or delay of, or injury to, passengers' baggage carried under this ticket beyond the sum of 250 francs, at which such baggage is hereby valued, unless a bill of lading or receipt be given therefor, and freight paid in advance on the excess value at the rate of one per cent. or its equivalent." 94 Fed. 886.

The court of appeals held that this limitation of 250 francs was reasonable, even by the law of this country. It should be noticed that the clause in The Kensington contained an express valuation of the baggage at 250 francs, while no valuation is expressly stated in the ticket here in question. A valuation agreed on by both parties is in some cases taken as a reason for permitting the carrier to limit his liability. "The plaintiffs having represented and agreed that the goods are of a specified value, and having thus obtained the benefit of a diminished rate of transportation, are now estopped to claim, in contradiction of their representation and agreement, that the goods are of a greater value." Graves v. Railroad Co., 137 Mass. 33, 34, 50 Am. Rep. 282, 283. "There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed after a loss." Hart v. Railroad Co., 112 U. S. 331, 340, 5 Sup. Ct. 151, 155, 28 L. Ed. 717, 721. From the opinion of the circuit court of appeals in The Majestic, however, it appears that the court did not consider a formal valuation to be a necessary element of the carrier's limited liability. To make a case turn on the presence or absence of the formal words, "at which the baggage is hereby valued," is to sacrifice substance to form. Let it be assumed, therefore, that in the case at bar the libelee might have reasonably limited its liability for its servants' negligence, though it could not have escaped from that liability altogether.

The clause in the case at bar provides, in substance, that a recovery shall be limited to $50, unless extra freight is paid. To be valid, this must be a "reasonable" stipulation. Hart v. Railroad Co.; The Majestic, above cited; Railroad Co. v. Fraloff, 100 U. S. 24,

25 L. Ed. 531. The word "reasonable" implies a relation to some condition or requirement. It was argued that the stipulation was reasonable, because the passenger could recover the total value of the baggage lost by declaring that value and paying extra freight. While forbidding a shipper to exempt himself from all liability for his servants' negligence, a court might yet hold that public policy did not forbid him to exempt himself from such liability where the value of the property had not been expressly declared and extra freight paid thereon. In Calderon v. Steamship Co., above cited, it was decided, however, that even this limited exemption from liability is against public policy. If, then, a carrier may not exempt himself from all liability for damage to baggage, even where extra freight has not been paid thereon, and may yet limit that liability to a reasonable sum, what is the condition or requirement regarding which the attribute "reasonable" is to be predicated? It appears to me clear, both from common sense and from the cases, that a reasonable limit must be that limit which a passenger may reasonably be expected to observe,—the limit of the value of the baggage ordinarily carried by a passenger under the circumstances supposed. "If the value thus disclosed exceeds that which the passenger may reasonably demand to be transported as baggage without extra compensation, the carrier, at its option, can make such additional charge as the risk fairly justifies." "To the extent, therefore, that the articles carried by the passenger for his personal use exceed in quantity and value such as are ordinarily or usually carried by passengers of like station and pursuing like journeys, they are not baggage for which the carrier, by general law, is responsible as insurer." Railroad Co. v. Fraloff, 100 U. S. 24, 27, 29, 25 L. Ed. 531, 534.

In The Majestic, 166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039, the supreme court expressed a doubt if a limitation of $50 was reasonable in the case of a first-cabin passenger crossing the Atlantic in a first-class steamer. In The Kensington, above cited, it was held that a limit of $50 was reasonable in the case of a second-cabin passenger crossing the Atlantic in a steamer of a somewhat inferior grade. I believe that 19 adult first-cabin passengers out of 20 who cross the Atlantic by a steamer like the New England carry personal effects of a value greater than $50. Therefore the limit of $50 appears to me unreasonable. That a $100 limit is reasonable in the case of a passenger on a Fall River steamboat, as decided by Judge Brown in The Priscilla (D. C.) 106 Fed. 739, appears to me plain. I hold, therefore, that the contract in the case at bar is governed by the law of the United States, and that by the United States law the exemption from all liability is excluded, and the limitation of liability to $50 is unreasonable. It should be added that in The Majestic, 166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039, at page 386, 166 U. S., page 602, 17 Sup. Ct., and page 1043, 41 L. Ed., the supreme court declared its agreement with the following statement made in Henderson v. Stevenson, L. R. 2 H. L. Sc. 470: "When a company desires to impose special and most stringent terms upon its customers, in exoneration of its own liability, there is nothing unreasonable in requiring that those terms shall be distinctly declared and deliberately

accepted." If this statement be literally correct, The Kensington was decided erroneously, for no "deliberate acceptance" of the limitation was there shown. In the case at bar the ticket was not delivered to the husband of the libelant at the time he paid the passage money, but was received by him from the company two days later, inclosed in an envelope. Neither the libelant nor her husband ever examined the ticket or ever "deliberately accepted" its terms. It should be added, further, that it is doubtful if any limitation which seeks to protect a company, not from the negligence, but from the theft or conversion of its servants, is consonant with public policy. Interlocutory decree for the libelant, damages to be assessed in accordance with the opinion.