## LA BOURGOGNE.

(Circuit Court of Appeals, Second Circuit. February 22, 1906.)

No. 6.

**1. ADMIRALTY—FINDINGS OF COMMISSIONER—REVIEW.**

The powers conferred on a commissioner in admiralty causes are analogous to those of matters in chancery, and his findings upon questions of fact depending upon conflicting testimony or upon the credibility of witnesses should not be disturbed unless clearly erroneous.

[Ed. Note.—Appeal and review in admiralty, see note to In re Eggert, 43 C. C. A. 9.]

**2. SHIPPING—LOSS OF BAGGAGE—MEASURE OF DAMAGES.**

Where Indian curios, having no market value in the usually accepted sense, taken on board a transatlantic steamship by a passenger for transportation from New York to Havre and paid for as extra baggage, were lost on the voyage through the sinking of the vessel, their value in New York, as shown by the opinions of experts, was properly taken as the measure of damages for the loss in a suit against the owners of the vessel.

**3. SAME—LIMITATION OF LIABILITY IN TICKET—EXTRA BAGGAGE.**

A condition in a steamship ticket limiting the liability of the carrier for loss of baggage to a stated sum does not apply to extra baggage taken and paid for as such under a subsequent agreement, nor will such a condition be enforced where the sum named bears such relation to the quantity of the baggage and the sum paid for its carriage as to render the limitation manifestly unreasonable.

**4. SAME—CONSTRUCTION OF CONTRACT.**

A notice or memorandum printed on the back of a steamship ticket purporting to limit the liability of the carrier for loss of baggage, not referred to in the body of the ticket nor called to the attention of the purchaser, is simply a notice, and forms no part of the contract.

**5. SAME—HARTER ACT.**

The provisions of section 2 of the Harter act, Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946], do not apply to passenger tickets.

**6. SAME—ARTICLES CARRIED AS BAGGAGE.**

The provisions of Rev. St. § 4281 [U. S. Comp. St. 1901, p. 2942], respecting the liability of vessels "as carriers," do not apply to articles carried by a passenger as baggage.

Wallace, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

The principle questions, relating to the right of the petitioner to limit its liability, were decided by this court in June, 1905. La Bourgogne (C. C. A.) 139 Fed. 433.

. A commissioner was appointed by the District Court to take testimony as to the amounts due the various claimants who had filed claims, other than those for loss of life, and report the same to the court. The commissioner made the following awards: To Pauline Henuy, as administratrix of Juliette Cicot, deceased, $2,802, for loss of money and personal effects. To Henry Hyer Knowles, as administrator of Gertrude Lalla Rookh Knowles, deceased, $2,000 for loss of personal effects. To William C. Perry, as administrator of Kate M. Perry, deceased, $5,277.50 for loss of money and personal effects. To William C. Perry, as administrator of Florence Perry, deceased, $1,050 for loss of money and personal effects. To William C. Perry, as administrator of Sadie Perry, deceased, $1,050 for loss of money and personal effects. To John Perry, as next-of-kin of Katherine Perry and Albert Perry, deceased, $350 for loss of personal effects. To Lewis Delfonti, $432 for loss of personal effects, and as damages for personal injuries. To Henri Cirri, $1,018 for loss of personal effects, and as damages for personal injuries. To George Deslions $25,000 for loss of property.

Exceptions were duly filed to this report but the same were overruled by the court and the report of the commissioner was confirmed. The action of the District Court in overruling these exceptions is now assigned as error. With the assent of the court the consideration of this part of the petitioner's appeal was postponed until after the main question was decided, and, by an order of the court made in August, 1905, was directed to be heard at the present term. Upon the law, as declared in the former decision of this court the petitioner, La Compagnie Generale Transatlantique, has no pecuniary interest in this appeal, as the claims, including those for loss of life, are far in excess of the fund in court. The claimants have no controversy among themselves. Were it not, therefore, for the possible contingency that the law may be changed by subsequent proceedings the questions now argued would be wholly academic.

Edward K. Jones and Charles Haldane, for the petitioner-appellant.

Robert D. Benedict for Deslions, claimant-appellee.

A Gordon Murray for Perry, Henuy, Knowles, Cirri, and Delfonti, claimants-appellees.

E. M. Bullowa for Cirri and Delfonti, claimants-appellees.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge (after stating the facts.) As the law now stands the petitioner-appellant, has no substantial pecuniary interest in the disallowance or reduction of the claims in controversy. Nevertheless as there may be a contingent interest we have felt constrained to consider and pass upon all the questions presented.

The Deslions claim is the largest in amount and was the one most strenuously opposed in the District Court. It may, therefore, be appropriately considered first. The claim was for $50,000, the value placed by the owner Deslions, upon a collection of Indian curios. The commissioner allowed $25,000, and, after careful consideration of the testimony, we do not feel justified in disturbing his conclusion.

It must be admitted that Deslions does not appear well on paper; he is involved in numerous contradictions and divagations; professing ignorance of matters which should be within his knowledge and failing to remember facts which it seems incredible he should have forgotten. Indeed, portions of his testimony evince such recklessness and are so obviously prejudicial to the success of his claim that it seems as if his conduct must be attributable to other causes than those suggested by the petitioner—possibly to an excitable French temperament or to

ignorance of our methods of procedure. Many of his lapses of memory and flippant answers were given when being interrogated regarding matters so clearly collateral that he could have answered fully and truthfully without in the least endangering his claim. His failure to do so seems hardly compatible with a deep laid scheme of perjury. May it not rather be attributable to some form of mental aberration not easy to characterize from a mere perusal of the printed record? It is possible that if the examination were had before the court we might be inclined to discredit his testimony, but the commissioner who saw and heard him during the 169 folios of direct and 541 folios of searching cross-examination evidently did not think him a perjurer. On the contrary the commissioner gave credence to the salient facts testified to by him and differed with him only as to the value of the property lost, believing, as we do, that an exaggerated value had been placed upon the collection. The fault of the claimant in making this valuation was, perhaps, a venial one considering the character of the curios, the fact that many of them were rare and impossible of duplication and that he had spent years in collecting them. Regarding many of the articles he was corroborated as to their rarity and value by experts having extensive knowledge of the subject and whose character and ability give additional weight to their opinions.

The question is not what the conclusion of this court should be on the testimony but whether the commissioner's report, sustained as it was, after full argument, by the District Court, was so clearly erroneous as to warrant us in setting it aside. The powers conferred upon a commissioner in admiralty causes are analagous to those of masters in chancery and his findings upon questions of fact depending upon conflicting testimony or upon the credibility of witnesses should not be disturbed unless clearly erroneous. Davis v. Schwartz, 155 U. S. 631, 636, 15 Sup. Ct. 237, 39 L. Ed. 289; Tilghman v. Proctor, 125 U. S. 136, 150, 8 Sup. Ct. 894, 31 L. Ed. 664; Kimberly v. Arms, 129 U. S. 512, 524, 9 Sup. Ct. 355, 32 L. Ed. 764; The Elton, 83 Fed. 519, 31 C. C. A. 496; The Cayuga, 59 Fed. 483, 8 C. C. A. 188, Panama R. Co. v. Napier Co., 61 Fed. 408, 9 C. C. A. 553. We are not satisfied that the report is so clearly against the weight of evidence as to justify us in disturbing it.

The bulk of Deslions' property had no market value in the usually accepted sense; its salableness depended upon finding a purchaser of means interested in Indian curiosities. No part of it was ever in Havre; it was sunk in mid ocean. From the nature of the case expert opinion could only be obtained in this country and under the rule established in The Umbria, 59 Fed. 489, 8 C. C. A. 194, the value in New York, the place of shipment, was properly shown as the measure of damages. There is no doubt whatever that eight boxes belonging to the claimant and aggregating 2,380 pounds in weight were placed on the Bourgogne the morning she sailed from New York and that he paid about $40 for their transportation to Havre as extra baggage. The testimony of the claimant and the petitioner's agent, who was at the pier on the morning in question, leaves little room for doubt as to the nature of the agreement. There was nothing unusual in taking

on large quantities of extra baggage; it was frequently done for additional compensation. That the petitioner's agent knew all the important facts regarding the boxes, except the nature and value of their contents, is shown by his own testimony. It is not pretended that the boxes were shipped as freight; they could not have been so shipped under the company's rules and no bill of lading was issued.

These being the facts proved by the testimony and found by the commissioner we do not think the claimant should be defeated by the application of the strict rules of common law pleading. If necessary an amendment should be made conforming the pleading to the proof. Knowing precisely what the transaction was it should be dealt with on that basis irrespective of the fact that the claimant may have stated the claim incorrectly in the informal preliminary statement filed by him.

The commissioner finds that the boxes in question went aboard the ship as a part of the baggage of the claimant's wife and that he is entitled to recover the value thereof. The claimant's wife was a passenger having a third-class ticket. It is objected that the loss of the baggage must be limited to the amount stipulated in the "conditions of passage" printed on the ticket. It is sufficient at present to say that no third-class ticket is in evidence and it is obvious that the court cannot construe the conditions of an agreement without knowing what those conditions are. So far as the Deslions' claim is concerned it is enough to say: First. That there is no evidence, except the oral testimony of one witness, as to the conditions of third-class tickets in July, 1898. Second. Assuming that the conditions referred to by M. de Bocande were printed on the third-class ticket in question they do not and cannot apply to extra baggage taken under a subsequent agreement, the price charged for transportation having been duly paid. Third. If the limitation, as stated by de Bocande, was $30 it was grossly inadequate. To limit the liability for the loss of 2,360 pounds of baggage, for the transportation of which the company had received $40, to the sum of $30 is so obviously unreasonable that further comment is unnecessary.

Before proceeding to the examination of the remaining claims it is wise to consider some of the contentions which are applicable to all. The first-class passage ticket tendered by the petitioner as representative of the tickets in use in July, 1898, has printed on its face in English, among other conditions, the following:

"III. Baggage and valuables may be insured at the current rate, on the company's open policy.

"IV. The company declines all responsibility for unchecked baggage or articles kept by the passengers themselves; also for money, species, securities, jewels and articles of value, unless they have been declared and taxed as valuables and deposited with the Purser against a receipt delivered by him.

"V. In case of damage to or total loss of baggage, for which the company or the captain may be responsible, the liability is not to exceed 100 dollars in first class, and 60 dollars in second class, regardless of the number of pieces or their contents, as the passengers should have their baggage insured for its full value on the company's open policy."

M. de Bocande, general agent of the French Line at the time of the loss of La Bourgogne, produced this ticket at the hearing of January

10, 1902, as a form in use in July, 1898. It must have been printed after the disaster, as the company's New York office was then at "No. 6 Bowling Green" the removal to "32 Broadway," which is printed on the ticket as the New York office, having taken place after the loss of the Bourgogne.

Asked if the ticket produced is the form that was in use at the time of the disaster M. de Bocande answered:

"This is the shape of the ticket.

"Question. Is it the form in the letters? Answer. The same exactly I think.

"Question. You don't mean to say there have not been changes? Answer. I don't know. * * *

"Question. I understood you to say that the second-class tickets were substantially in the same form? Answer. The same form and red in color; that is all; third class, green."

Again, on cross-examination the witness gave the following testimony:

"Question. Is that the same form that was in use in 1898? Answer. I suppose so. I don't think there was any other form of ticket in use in 1898. Except as to color of ticket the same form was in use in all classes of passage.

"Question. Did all of the three different shades of tickets have all of the stipulations printed on the face of them? Answer. They have all the same except for baggage indemnity; the amount of indemnity for baggage varies with the price paid for the passenger, first, second and third. I think it is $100.00 for first class and $60.00 for second and $30.00 for third class. All the other clauses are the same to my knowledge.

"Question. Did all the tickets have the stipulation printed on the face of the ticket? Answer. This way to my knowledge.

"Question. That is you mean all the tickets sold here in New York for Havre? Answer. Yes."

On the other hand Mr. A. Gordon Murray, counsel for claimants, but in 1898 a clerk in a law office in the city of New York, called at the office of petitioner at No. 6 Bowling Green and had an interview with M. Faguet, the agent in charge at the time. Mr. Murray testifies as follows:

"I requested Mr. Faguet to show me the form of the ticket used. He did so, and the ticket was a square pink ticket with stipulations printed on the back, with no reference made to the stipulations on the face of the ticket. He wouldn't allow me to take one of them with me."

On cross-examination he said:

"I don't recollect the class. I know it was a pink ticket, but I made a copy of it which was in French, but the copy I have not been able to find in the last eighteen months, although I have looked high and low for it."

He further stated that he was not sure whether the ticket shown him by Faguet or another ticket shown him about the same time, by another person about to embark for Havre, was in French, but further on, his recollection being refreshed, he said that the Faguet ticket was in English. He is positive, however, that the stipulations were printed on the back of the ticket. John M. Perry, whose wife and children were lost on the Bourgogne, and who purchased their passage ticket the day before the steamer sailed, testified that his recollection was that the ticket was printed in French and that his attention was

not called to any stipulation limiting the petitioner's liability. The commissioner carefully reviewed all the testimony and found as a fact that whatever conditions where attached to the passage tickets were printed on the back and that no one representing the petitioner called the attention of the holders of the tickets to the conditions on the back and that there is no proof that the passengers read the conditions. He also finds that the petitioner has failed to prove that the ticket in evidence was the form issued to the passengers on La Bourgogne.

It certainly was in the power of the petitioner to set this question at rest by producing the identical form used in 1898 and its failure to do so raises a presumption in favor of the claimants' contention. It may be that, somewhere in the 2,000 pages of this record, a sufficient reason is given for the failure to produce this proof, if so, we have been unable to discover it. The carrier asks for a strict construction against the passenger of the conditions of a contract upon proof which leaves the nature of those conditions in doubt. The commissioner having found the fact in favor of the claimants we do not feel justified in disturbing his conclusion for the reasons heretofore stated when considering the Deslions claim.

The law in such circumstances is plain. The following quotation from Wheeler on the Modern Law of Carriers, p. 263, is cited with approval by the Supreme Court in the Majestic, 166 U. S. 375, 384, 17 Sup. Ct. 597, 601 (41 L. Ed. 1039):

"A notice or memorandum, even though printed upon the bill of lading or other contract of the carrier, unless referred to in the body of the contract and thus made a part of it, is no more than a notice, and does not form a part of the contract between the shipper and the carrier."

The Harter act, Act Feb. 13, 1893, c. 105, 27 Stat. 445, [U. S. Comp. St. 1901, p. 2946], is not applicable to the present situation.

This court has decided in the case of The Kensington, 94 Fed. 885, 36 C. C. A. 533, that the provisions of the second section of that act do not apply to passenger tickets. We are also of the opinion that section 4281 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 2942] is inapplicable.

In Wheeler v. O. S. N. Co., 125 N. Y. 155, 26 N. E. 248, 21 Am. St. Rep. 729, the Court of Appeals gave careful consideration to the proper construction of this section and, at page 161 of 125 N. Y., page 249 of 26 N. E. (21 Am. St. Rep. 729), say:

"But what the carrier and his customer might accomplish by special agreement, Congress could effect by statute in the absence of such agreement, but must necessarily leave the lesser liability of bailee unaffected if it merely removes the liability as carrier, and does not, by clear and definite language, indicate its purpose to go further. So much, and no more than that, the section under consideration accomplished, for it distinctly removes the liability as carrier without touching that as bailee. We are bound to assume that the word 'carrier' was used in its recognized legal sense, and not in some loose or careless and merely colloquial way; and that, especially, because it occurs in connection with the idea of liability, and the phrase 'liable as carrier' can only mean the liability attached by law to that public employment."

We are fully in accord with this view.

See also as bearing on the question Carlson v. Oceanic Co., 109 N. Y. 359, 16 N. E. 546; Calderon v. Atlas Co., 170 U. S. 272, 18 Sup. Ct. 588, 42 L. Ed. 1033; N. Y. C. & H. R. Co. v. Fraloff, 100 U. S. 24, 25 L. Ed. 531.

We have examined the testimony relating to the loss of property represented by the various claimants and are of the opinion that it sufficiently warrants the findings of the commissioner both as to the character and amount of the property and its value. To attempt an analysis of the testimony in each instance would unduly prolong this opinion and would serve no useful purpose. The award of $250 each to Delfonti and Cirri is most conservative in view of the injuries they received and the suffering and privation occasioned by the sinking of the Bourgogne.

That part of the decree which is involved in the present appeal is affirmed with interest and costs.

WALLACE, Circuit Judge (dissenting). I cannot take the charitable view of Deslions' testimony which seems to prevail with the majority of the court. His testimony is so full of falsifications that it is utterly unworthy of credit. It is apparent throughout that he has been influenced by the motive of withholding any information which might afford an opportunity to the steamship company to expose the fraudulent and extravagant character of his claim. Rejecting his testimony, there is no competent evidence of the value of the property lost. The testimony of other witnesses does establish that some time prior to the shipment he had a collection of curios in his possession, and it may afford a basis for estimating the value of some part of them. It also shows that he packed some of his curios for shipment. What these were does not appear, nor does their value appear. He shipped a certain number of trunks, and the weight appears; but what was in the trunks and the value of the contents cannot be ascertained except by his testimony. He has chosen for his own purposes to destroy the value of that testimony, and ought not to be allowed a recovery from sympathy. The case is not one in which the court should be controlled by the finding of the commissioner. When a witness discredits himself 20 times over by his prevarications, and there is not any other competent evidence of the amount of his claim, the finding of a commissioner allowing just half of it is purely speculative and ought not to have any influence with a reviewing court.

Except as to the claim of Deslions, I concur in the opinion.