# ADAMS EXPRESS COMPANY v. BERRY & WHITMORE COMPANY.

---

CARRIERS; EVIDENCE; PRINCIPAL AND AGENT; ACTIONS; LIMITATION OF LIABILITY FOR NEGLIGENCE; INSTRUCTIONS TO JURY.

1. In an action of trover by the shipper of a package against a carrier for conversion of the package, a statement by the agent of the carrier to the attorney of the shipper, upon whom the agent had called to negotiate a settlement of the claim, that the package had been embezzled by an employee of the carrier, is admissible in evidence, when offered by the plaintiff, not as part of the *res gestæ*, but as the admission of an agent acting within the scope of his employment.

2. An action of trover will lie by a shipper against a carrier for conversion of the goods shipped, and recovery may be had for the full value of the goods, where the goods were embezzled by an employee of the carrier, although the shipping receipt limits the liability of the carrier to a specified sum, which is less than such value. Such a limitation applies only in case of loss of the goods by negligence.

3. In an action of trover by a shipper against a carrier for the conversion of goods shipped, the trial court does not err in instructing the jury that there is evidence tending to show that the defendant embezzled the goods, and that the defendant's failure to explain the

disappearance of the shipment raises a presumption that the goods were converted by the defendant, where the plaintiff has proved the delivery of the goods to the carrier, the carrier's failure to deliver to the consignee, and that an agent of the carrier, while negotiating for a settlement of the claim, stated to the attorney for the shipper that the carrier had traced the goods to one of its employees, who had run away and had been prosecuted for embezzlement; while the defendant, although admitting that the goods had been traced into the hands of one of its employees, has denied that any of its employees had been prosecuted for embezzlement, but is unable to give the name of the employee in question, or to say whether he is still working for the carrier; and where the defendant, before suit was brought, refused to furnish the plaintiff with any information as to the handling of the goods, the names of its employees handling them, and their length of service in the employ of the defendant.

No. 2066.   Submitted March 11, 1910.   Decided May 10, 1910.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action against a carrier to recover damages for the loss of a shipment of goods.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal from a decision of the supreme court of the District of Columbia allowing appellee, the Berry & Whitmore Company, a corporation, plaintiff below, to recover the full value of a diamond brooch delivered to appellant, the Adams Express Company, a partnership, defendant below, for transportation, but which never reached its destination, notwithstanding that the contract of carriage limited the amount to be recovered in case the brooch was lost to a sum much lower than the actual value of the same.

The following facts appear from the evidence in the case: The appellant is a copartnership doing business throughout many States of the Union as a common carrier of goods.   On December 12th, 1905, there was delivered to it by appellee, a corporation engaged in the retail jewelry business in this city,

a diamond brooch for transportation from Washington to Port Huron, Michigan. This brooch was contained in a paper box about 6 by 4½ inches in size. The box was sealed, and bore the address of the consignee, as well as the seal of the appellee or consignor. On February 14th, 1906, appellee, through its attorney, notified appellant that the brooch had not reached its destination, and asked what steps had been taken to ascertain the cause, also requesting the name of the agent of appellant who had last handled the package. On February 20th an agent of the appellant replied to this inquiry, saying that his company had nearly completed its investigation of the matter, and would soon be in a position to state what disposition it would make of the claim. Appellee's attorney testified that after the receipt of this reply an agent of the appellant called to see him, but declined to give the desired information, "and that, on the occasion of the visit of the agent of the express company to his office, he was informed by said agent that they had traced the package into the hands of the employee of the company in Baltimore whose duty it was to carry it from the office of the company to the express car; that he had run away, and was prosecuted for embezzlement." Tender of $50 was then made in settlement of the claim, but rejected by appellee. On March 13th appellant again wrote appellee, refusing to furnish information "as to the handling of this package, names of all handling it, how long in the service, etc.," and renewing its offer of $50 in full liquidation of the claim. Refusing this sum, appellee brought suit for the full value of the brooch.

The declaration was in two counts,—one in assumpsit on the contract of carriage, and the other in trover. It appeared at the trial that, prior to the sending of the brooch, appellee had sent many packages by the appellant; that one of appellant's blank receipt books was kept on the counter of appellee's shiping room; that the receipt for the package in question was made out from this book; that appellee was in the habit of sending express packages without declaring their value; and that the package containing the brooch was so sent, no inquiry being made and no statement given as to its value. Said receipt was

in the usual form, and contained the following: "1. In consideration of the rate charged for carrying said property, which is regulated by the value thereof, and is based upon a valuation of not exceeding $50, unless a greater value is declared, the shipper agrees that the value of said property is not more than $50, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than $50 if no value is stated herein," etc.

Appellee offered evidence tending to show that a special wagon for valuable packages, screened around, took said package from its store, and that the value of the package was $350. It also, as above noted, offered in evidence the testimony of its attorney that, "on the occasion of the visit of the agent of the express company to his office, he was informed by said agent that they had traced the package into the hands of the employee of the company in Baltimore whose duty it was to carry it from the office of the company to the express car; that he had run away, and was prosecuted for embezzlement." To the evidence as to the value of the brooch being over $50 appellant excepted as immaterial, and to the above testimony of appellee's attorney excepted on the ground that it was hearsay.

The appellant produced as a witness its Washington agent, who testified, in effect, that his company made an effort to trace the brooch when its failure to reach its destination was reported; that the method of tracing was to check the waybill, and trace by the messengers along the road; that "they knew what train it left Washington on, and the name of the messenger, but beyond that they could not trace it; could not find it; they traced it into the hands of one of their employees in Baltimore, and could not trace it out of that employee at all; he, the employee, had no record of the shipment." Witness did not know the name of this employee, or whether he was still working for the company. He also denied that any employee of his company was prosecuted for embezzlement. Appellant did not attempt to charge appellee with concealing the value of the package.

Thereupon appellant rested, and prayed the court to instruct

the jury that the limit of appellee's recovery would be $50. The court declined so to do, and charged the jury in part as follows: "The declaration consists of two counts,—one in negligence, and the second for conversion. Under the first count the plaintiff would be limited to $50; if you find that the goods were lost through the negligence of the express company you will find for $50. If you find upon the evidence that they were converted by the company or its agents in handling the goods, then the plaintiff is entitled to recover the actual value of the goods, because that is entirely outside the contract." To the refusal of the court to charge the jury as requested, and to the court's actual charge, above given, the appellant duly excepted, and, the jury returning a verdict for $350, or the full value of the brooch, brought this appeal.

*Mr. William S. Thomas* and *Mr. Sidney T. Thomas* for the appellant.

*Mr. Edward S. McCalmont* and *Mr. Joseph C. Sullivan* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

In view of the court's charge, the verdict of the jury must have been based upon the finding that the brooch was embezzled or converted by the appellant through its agents, and not merely lost. If, therefore, this question of conversion was submitted to the jury under proper instructions by the court, and was based upon competent evidence, said finding will be conclusive of the fact of conversion. Hence our first inquiry is directed to this point.

We will first consider the competency of the testimony of appellee's attorney to the effect that an agent of appellant stated to him, when said agent called to talk over a settlement of the claim, that the package had been embezzled by one of appellant's employees. A review of the circumstances surrounding this statement demonstrates its admissibility. Appellant does not

deny that its agent called upon appellee's attorney at the time and for the purpose stated, that he was authorized so to do, or that he made the statement accredited to him.   When the agent made said call, he did so as the avowed representative of appellant to negotiate for a settlement of the claim in question.   His acts, so far as within the course of his employment and the actual or apparent scope of his authority, were the acts of his principal.   As to the admissions of an agent, while they may never be used to prove the agency, they are binding on the principal, once the relation of principal and agent is established, so far as within the agent's employment and authority. *Over* v. *Schiffling,* 102 Ind. 191, 26 N. E. 91; *Chadsey* v. *Greene,* 24 Conn. 562; *Chapman* v. *Twitchell,* 37 Me. 59, 58 Am. Dec. 773; *Wehle* v. *Spelman,* 1 Hun, 634.   The cases cited by appellant in this connection deal principally with the doctrine of *res gestœ;* hence are not in point.   It was not sought to introduce this evidence as a part of the *res gestœ,* but as a statement made by an agent while acting in a matter with which he had been authorized and directed to deal.   As such, it was, we think, clearly admissible as having a direct bearing on the claim which the agent was endeavoring to settle in behalf of the principal.

It now becomes necessary to determine the extent to which the special contract of carriage, or the so-called $50 clause therein, absolved the carrier from liability.   Did it limit the liability of the carrier to that amount in any event, or should it be held capable of application only in case the package was lost through the negligence of the carrier?   In other words, did said clause cover liability for conversion or embezzlement?

Since the degree of care which a carrier may reasonably be expected to exercise in regard to a particular package intrusted to it for transportation is proportionate to the value of said package, the carrier is allowed to consider that degree of care when making up its schedule of rates.   This is permitted upon the theory that, as more expense is entailed in the exercise of a high degree of care than would be necessitated by the exercise of a lower degree of care, it is but equitable that the carrier

should obtain more compensation in the one instance than in the other.    *Hart* v. *Pennsylvania R. Co.* 112 U. S. 331, 28 L. ed. 717, 5 Sup. Ct. Rep. 151; *Pennsylvania R. Co.* v. *Hughes,* 191 U. S. 477, 48 L. ed. 268, 24 Sup. Ct. Rep. 132.    Following this theory, the law has permitted the carrier to make special contracts with the shipper, in which the shipper, in consideration of a reduction in the rate which would ordinarily be charged for transportation of goods such as he has for shipment, agrees that, in case the goods are not safely carried to their destination, he will accept in damages a sum stated, which is usually much less than the real value of said goods.    By so doing the shipper waives, in a measure, his common-law right to exact in damages the full value of the goods.    But courts have closely scrutinized such contracts, and have generally allowed the carrier to make them only where they provided for partial, not total, absolution from liability, and, further, where the carrier furnished consideration for such limitation in the form of a reduction in the usual rates.    To such restriction the carrier impliedly submits when it engages in a business of a public nature.    *Liverpool & G. W. S. S. Co.* v. *Phenix Ins. Co. (The Montana)* 129 U. S. 397, 32 L. ed. 788, 9 Sup. Ct. Rep. 469.

It is evident that the only way in which a carrier may be relieved from its common-law obligation to pay the full value of goods lost through its negligence is by means of a special contract with the shipper, as above noted.    It is also clear, according to the ordinary rules of construction, that such relief is only to the extent named in that contract.    *New York C. R. Co.* v. *Lockwood,* 17 Wall. 357, 21 L. ed. 627.    Is it possible for the carrier to extend this doctrine of contractual limitation of liability to cover cases where the goods are converted or embezzled by it?    We think not.    So great would be the opportunity for fraud that public policy will not suffer a practice so manifestly calculated to invite it.    That the shipper, in a particular instance, might be willing to make such a concession, does not alter the rule; it is not within the power of the individual to barter away the right to protection inherent in the general pub-

lic. In discussing this question, the court, in the case of *The New England,* 110 Fed. 415, said: "It should be added, further, that it is doubtful if any limitation which seeks to protect a company, not from the negligence, but from the theft or conversion, of its servants, is consonant with public policy." Story, in his work on Bailments, 8th ed. § 32, says: "In respect to cases of loss by fraud, there is a salutary principle, belonging both to our law and the civil law. It is, that the bailee can never protect himself against responsibility for losses occasioned by his own fraud; nay, not even by a contract with the bailor that he shall not be responsible for such losses, for the law will not tolerate such indecency and immorality that a man shall contract to be safely dishonest." See also *Alabama G. S. R. Co.* v. *Little,* 71 Ala. 615; *Louisville & N. R. Co.* v. *Sherrod,* 84 Ala. 178, 4 So. 29; *Zouch* v. *Chesapeake & O. R. Co.* 36 W. Va. 524, 17 L.R.A. 116, 15 S. E. 185; *American Exp. Co.* v. *Sands,* 55 Pa. 140; *Ronan* v. *Midland R. Co.* Ir. L. R. 14 C. L. 157; Schouler, Bailments & Carriers, sec. 20.

Would it be possible for a carrier, after receiving for transportation goods worth $1,000, to embezzle them, and then plead as a limitation of its liability the fact that the shipper had not stated their value to be more than $50? In other words, can a carrier engaged in business of a public nature be permitted to justify a conversion of goods intrusted to it, on the ground that its liability is fixed by contract? Such would be the absurd result were appellant's contention carried to its logical conclusion.

It becomes clear, in the light of the foregoing, since the question whether the package was converted by appellant or its agent was a proper one for the jury to determine, that evidence as to the real value of the package was competent. Without it the jury, in the event of their finding that the package was converted, as they actually did find, would have been unable to assess damages on that basis. The appellant's exception on this point was without foundation.

The two remaining assignments of error, the one based on the proposition that the court should not have instructed the jury

that there was evidence tending to show that the defendant embezzled the shipment, and the other challenging the court's charge to the effect that the defendant's failure to explain the disappearance of the shipment raised a presumption that said shipment had been converted by it, are so related that they may be considered jointly.

Both these assignments are untenable. A survey of the situation makes obvious the fact that the adoption of any other rule than that reaffirmed by the trial court would permit the carrier, in a large majority of the cases where goods disappear while in its keeping for transportation, to escape liability for their conversion, even though the carrier had not shown that said goods were lost by it, and not converted. For example, suppose a shipper in Maine intrusts goods to a carrier for transportation to California. The goods fail to reach the consignee. Must the shipper trace those goods through the small army of employees and agents of the carrier scattered across the country, in an endeavor to find a break in the chain? Is it not more reasonable to hold that an explanation is due from the carrier? The system of transportation employed by the carrier is best known to it. The record of the particular shipment is in its possession. In the absence of an explanation affording a legal excuse, it is the party at fault, having failed of its duty to deliver the goods to the consignee. In the case at bar, the shipper proved the delivery of the package in question to the carrier, and the carrier's failure to deliver it to the consignee. In addition, the shipper offered evidence to the effect that an agent of the carrier, while negotiating for a settlement of the claim for the loss of said package, stated to the shipper, through its representative, that the carrier had traced the package into the hands of one of its employees, and that said employee "had run away, and was prosecuted for embezzlement." The only evidence introduced by the carrier to rebut this was the testimony of one of its agents. This witness admitted that the package was traced into the hands of an employee of the carrier, and that it could not be traced farther. While denying that any employee of his company had been prosecuted for embezzle-

ment, witness was unable to give the name of the employee known to have been the last to handle the package, and could not say whether that employee was still working for the company. As appears from a review of the correspondence and negotiations of the parties prior to the bringing of this suit, the carrier, though requested so to do, refused to furnish any information "as to the handling of this package, names of all handling it, how long in the service." It sought to throw all the burden of proof upon the innocent shipper, and, at the same time, to deny to him possession of the facts relating to the disappearance of the package, which facts were, or ought to have been, known to it. In other words, the carrier, knowing that the evidence necessary to account for the disappearance of the package must, from the very nature of the case, naturally come from it, sought, by remaining silent and shielding its guilty agent, to impose upon the shipper, the party without fault, a burden which would compel the shipper to accept its terms of settlement. The law cannot countenance such a subterfuge. A party cannot do indirectly what it would not be allowed to do directly. The situation was occasioned by the carrier's failure to do that which it held itself out to the public, as the servant of the public, as capable of doing. It then became its duty, so far as within its power, to explain the situation. This it failed to do. No hardship resulted, therefore, in construing that situation in the light most favorable to the innocent shipper. We accordingly hold that the evidence fully warranted the court in charging the jury as it did. *The New England,* 110 Fed. 415; *American Exp. Co.* v. *Sands,* 55 Pa. 140.

The case of *Friedlander* v. *Texas & P. R. Co.* 130 U. S. 416, 32 L. ed. 991, 9 Sup. Ct. Rep. 570, much relied on by appellant, is not in point, as will appear from the following excerpt from the opinion therein: "The question arises, then, whether the agent of a railroad company at one of its stations can bind the company by the execution of a bill of lading for goods not actually placed in his possession, and its delivery to a person fraudulently pretending, in collusion with such agent, that he had shipped such goods, in favor of a party without notice, with

whom, in furtherance of the fraud, the pretended shipper nego-tiates a draft, with the false bill of lading attached." There the agent, acting in collusion with an alleged shipper, fraudulently receipted for goods never actually received by him; here goods were actually received by the carrier from an innocent shipper.

Finding no error in the record the judgment is affirmed, with costs.                                                              *Affirmed.*